FILED

IN THE CIRCUIT COURT OF THE FIFTH JUDICIAL CIRCUIT
IN AND FOR LAKE COUNTY, FLORIDA

2009 DEC 14  PM 3: 17

CLERK, U.S. DISTRICT COURT
OCALA, FLORIDA

PYRRHIC VICTORY, LLC,
a Florida limited liability company,

      Plaintiff(s),

vs.

INDIGO REAL ESTATE, LLC
a Delaware limited liability company,

      Defendant(s)

Case No.: 09 CAC5D3

5:09-CV-544-OC-25-GRJ

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, PYRRHIC VICTORY, LLC, a Florida limited liability company ("PYRRHIC"), by and through the undersigned counsel, hereby sues Defendant INDIGO REAL ESTATE, LLC, a Delaware limited liability company ("INDIGO"), and alleges:

### Jurisdiction, Venue, and Parties

1.    This action seeks a declaratory judgment concerning those certain Promissory Notes secured by mortgages recorded in Official Records Book 2772, Page 996 and Official Records Book 2772, Page 1010, of the Public Records of Lake County, Florida, which purportedly encumber the real property as more particularly described in said mortgages the values of which Notes purportedly exceeds $15,000.00 exclusive of interest, costs and attorney's fees.

2.    Venue is proper in Lake County, Florida, the location where the causes of action accrued and where the real property ("Property") which is purportedly encumbered by the above referenced mortgages is situated.

3.    Plaintiff PYRRHIC is and was, at all material times, a Florida limited liability company with its principal place of business in Broward County, Florida.



EXHIBIT
A

4.    Defendant INDIGO is and was, at all material times, a Delaware limited liability company.

## GENERAL ALLEGATIONS

5.    By virtue of that certain Absolute Assignment of Note, Mortgage and Other Loan Documents ("Assignment") recorded in Official Records Book 3630, Page 153 of the Public Records of Lake County, Florida. A copy of which is attached hereto as Exhibit "A". INDIGO purports to be the owner and holder of that certain Promissory Note ("Note") purportedly in the original principal amount of Twelve Million and no/100—($12,000,000.00) Dollars which Note is purportedly secured by a Mortgage, Assignment of Leases and Security Agreement ("Mortgage") recorded in Official Records Book 2772, Page 996, of the Public Records of Lake County, Florida. A copy of the Note, Mortgage and Assignment is attached hereto as Exhibit "B".

6.    Pursuant to the Assignment INDIGO purports to be the owner and holder of that certain Promissory Note ("Note") purportedly in the original principal amount of Two Million Four Hundred Sixty Nine Thousand and no/100—($2,469,000.00) Dollars which Note is purportedly secured by a Mortgage, Assignment of Leases and Security Agreement ("Mortgage") recorded in Official Records Book 2772, Page 1010, of the Public Records of Lake County, Florida. A copy of the Note and Mortgage is attached hereto as Exhibit "C".

7.    PYRRHIC is the owner of the Property by virtue of that certain Sherriff's Deed dated April 16, 2009 and recorded in Official Records Book 3762, Page 0724 of the Public Records of Lake County, Florida. A copy of which is attached hereto as Exhibit "D".

## USURY ALLEGATIONS

8.    The allegations of fact set forth in paragraph 1 through 7 are incorporated herein as if set forth in full.

9.    The loans as evidenced by the Notes constitute a loan of money or a forbearance to collect a debt as defined in Fla. Stat. §687 *et seq*.

10.    There was an understanding between the original parties to the Notes as memorialized in the Notes and related loan documents that the money loaned would be repaid in the amount as set forth in the Notes.

11.    The agreement for the repayment of the debt was at a greater rate of interest than is allowed by law and specifically exceeded the criminally usurious rate of twenty-five (25%) per annum, simple interest, in violation of Fla. Stat. §687.071.

12.    Fla. Stat. §687.071 (7) states "no extension of credit made in violation of this Section shall be an enforceable debt in the Courts of this state."

13.    INDIGO had actual knowledge that the loans were criminally usurious.

14.    INDIGO now stands in the shoes of the original lender and was fully aware of all of the facts set forth herein at the time it purportedly acquired the Mortgages and Notes.

## COUNT I

15.    Plaintiffs incorporate and re-allege paragraphs 1 through 14 as if fully set forth herein.

16.    Pursuant to Fla. Stat. §86.011 this Court has jurisdiction to declare the rights, status and other equitable and legal relations whether or not further relief is or could be claimed.

17.    PYRRHIC is in doubt and uncertain as to its rights, arising from and relating to its ownership of the property, the Notes and Mortgages. PYRRHIC believes, that, due to the fact the Notes and Mortgages are criminally usurious under Florida Law both Notes and both Mortgages are void and not enforceable in the Courts of this State.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands trial by jury.

WHEREFORE, PYRRHIC respectfully request that this Honorable Court take jurisdiction over this cause and enter its Order declaring that each of the Notes and the Mortgages are void, unenforceable and do not constitute a lien on the Property.

Dated this 2nd day of November, 2009.

Respectfully Submitted,

Bruce K. Herman, Esq.
*Counsel for Plaintiff*
1401 East Broward Boulevard, Ste. 206
Ft. Lauderdale, FL 33301
Tel.: 954.762.2555
Fax: 954.522.0396

By: _____
       Bruce K. Herman, Esq.
       Fla. Bar. No. 260622

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands trial by jury.

WHEREFORE, PYRRHIC respectfully request that this Honorable Court take jurisdiction over this cause and enter its Order declaring that each of the Notes and the Mortgages are void, unenforceable and do not constitute a lien on the Property.

Dated this 2nd day of November, 2009.

Respectfully Submitted,

Bruce K. Herman, Esq.
*Counsel for Plaintiff*
1401 East Broward Boulevard, Ste. 206
Ft. Lauderdale, FL 33301
Tel.: 954.762.2555
Fax: 954.522.0396

By: _____
Bruce K. Herman, Esq.
Fla. Bar. No. 260622

EXHIBIT "A"

PARCEL 1:

The West ½ of the Southeast ¼ of the Southwest ¼, lying Southeasterly of C.R. 565, in Section 1, Township 22 South, Range 24 East, Lake County, Florida.

ALSO

The East ½ of the Southeast ¼ of the Southwest ¼ in Section 1, Township 22 South, Range 24 East, Lake County, Florida

Tracts 53 and 54, Groveland Farms, Section 1, Township 22 South, Range 24 East, recorded in Plat Book 2, Pages 10 and 11, Public Records of Lake County, Florida.

PARCEL 2:

Tracts 59 and 60, in Section 1, Township 22 South, Range 24 East, in Groveland Farms, recorded in Plat Book 2, Pages 10 and 11, Public Records of Lake County, Florida.

PARCEL 3:

Parcel A: The Southwest ¼ of the Northwest ¼ of the Southeast ¼, Section 1, Township 22 South, Range 24 East, Lake County, Florida.

Parcel B: The Northwest ¼ of the Northwest of the Southeast ¼, Section 1, Township 22 South, Range 24 East, Lake County, Florida.

Parcel C: The West ¼ of the Northeast ¼ of the Northwest ¼ of the Southeast ¼, Section 1, Township 22 South, Range 24 East, Lake County, Florida.

Parcel D: The South ½ of the West ½ of the Northeast ¼ East of Road, Section 1, Township 22 South, Range 24 East, Lake County, Florida.

Parcel E: The South ½ of the Southeast ¼ of the Northwest ¼ East of Road, Section 1, Township 22 South, Range 24 East, Lake County, Florida.

Parcel F: All of Tracts 35, 45 and 46, lying East of C.R. Road 565, and that part of the East 297 feet of Tract 36, lying East of C.R. Road 565, all lying and being in Section 1, Township 22 South, Range 24 East, Groveland Farms, recorded in Plat Book 2, Pages 10 and 11, Public Records of Lake County, Florida.

EXHIBIT "A"

DLA PIPER US LLP
100 NORTH TAMPA ST
TAMPA, FL 33602



CFN   2006061242
Bk 03430 Pgs 0152 - 1557 (2pgs)
DATE: 05/22/2006 11:00:01 AM
NEIL KELLY, CLERK OF COURT
LAKE COUNTY
RECORDING FEES 27.00

Prepared by and Record and return to:

Lauren J. Goldberg
DLA Piper US LLP
101 E. Kennedy Boulevard
Suite 2000
Tampa, FL 33602

## ABSOLUTE ASSIGNMENT OF
## NOTE, MORTGAGE AND OTHER LOAN DOCUMENTS

KNOW ALL MEN BY THESE PRESENTS, that BFWest, LLC, a Delaware limited liability company, having a mailing address of 1401 East Broward Boulevard, Suite 201, Fort Lauderdale, Florida 33301 ("Assignor"), for and in consideration of Ten Dollars ($10.00) and other good and valuable consideration received from and on behalf of Indigo Real Estate LLC, a Delaware limited liability company, as assignee for WestLB AG, New York Branch, having a mailing address at 1211 Avenue of the Americas, New York, New York 10036 ("Assignee"), does hereby assign, convey, sell and transfer to Assignee all the right, title and interest of the Assignor in and to the following documents (collectively, the "Assigned Documents"):

1.    Promissory Note, dated February 10, 2005, from Groveland Estates, LLC, a Florida limited liability company ("Borrower"), in favor of BFSPE, LLC, a Delaware limited liability company ("BFSPE"), in the original principal amount of Twelve Million and No/100 Dollars ($12,000,000.00), as subsequently assigned to Assignor pursuant to that certain Assignment of Mortgages and Loan Documents dated March 20, 2006 (the "Prior Assignment Agreement");

2.    Mortgage, Assignment of Leases and Security Agreement, dated February 10, 2005, from Borrower to BFSPE, recorded in Official Records Book 2772 at Page 996 of the Public Records of Lake County, Florida (the "Public Records") (the "First Mortgage"), as subsequently assigned to Assignor pursuant to the Prior Assignment Agreement;

3.    UCC-1 Financing Statement, naming Borrower as debtor, and BFSPE as secured party, recorded in Official Records Book 2772 at Page 1006 of the Public Records, as subsequently assigned to Assignor pursuant to the Prior Assignment Agreement.

4.    Promissory Note, dated February 10, 2005, from Borrower in favor of BFSPE, in the original principal amount of Two Million Four Hundred Sixty Nine Thousand and No/100 Dollars ($2,469,000.00), as subsequently assigned to Assignor pursuant to that certain Assignment of Mortgages and Loan Documents dated October 2, 2006 (the "Second Prior Assignment Agreement");

TAMP\00046640\1

5.    Mortgage, Assignment of Leases and Security Agreement, dated February 10, 2005, from Borrower to BFSPE, recorded in Official Records Book 2772 at Page 1010 of the Public Records (the "Second Mortgage"), as subsequently assigned to Assignor pursuant to the Second Prior Assignment Agreement;

6.    UCC-1 Financing Statement, naming Borrower as debtor, and BFSPE as secured party, recorded in Official Records Book 2772 at Page 1020 of the Public Records, as subsequently assigned to Assignor pursuant to the Second Prior Assignment Agreement.

The foregoing assignment is without recourse to Assignor and is without any representations or warranties of any kind by Assignor; provided, however, Assignor does hereby represent and warrant to Assignee as follows:

1.    (i) Assignor has full legal right, power and authority to execute and deliver this Absolute Assignment of Note, Mortgage and Other Loan Documents (the "Absolute Assignment"), and to consummate the transactions contemplated hereby; (ii) this Absolute Assignment constitutes the authorized, valid and legally binding obligation of Assignor enforceable in accordance with its terms; (iii) the person who executed this Absolute Assignment is fully and lawfully authorized and empowered to cause Assignor to enter into and consummate this Absolute Assignment; and (iv) Assignor is the owner and holder of the Assigned Documents and has not previously assigned all or any portion of its interest in the Assigned Documents, or the loan represented thereby, other than to WestLB AG, New York Branch.

2.    This Absolute Assignment shall be governed by, and construed in accordance with, the laws of the State of Florida.

[signature page to follow]

2

TAMPDOCS32304B3

IN WITNESS WHEREOF, Assignor has executed this Absolute Assignment as of the 23 day of April, 2008.

Signed, sealed and delivered in the presence of:

ASSIGNOR:

BFWEST, LLC, a Delaware limited liability company

BY:  BUILDER FUNDING, LLC, a Delaware limited liability company, its sole managing member

BY:  BUILDER FINANCIAL CORP., a Florida corporation, its managing member

Print Name: LUCY MORRIS

Print Name: GAVIN BANTA

By: _____
Name: Kyle Meyer
Title: President, Builder Financial Corp.

STATE OF Florida )
                          ) SS
COUNTY OF Broward )

The foregoing instrument was acknowledged before me this 28 day of April, 2008, by Kyle Meyer, as President of BuilderFinancial Corp., Managing Member of Builder Funding, LLC, Managing Member of BFWest, LLC, a Delaware limited liability company, on behalf of such entity. He is personally known to me or has produced _____ as identification.


Gavin S. Banta
Commission DD782712
Expires July 26, 2012
www.bankofnotary.com

Print Name: _____ Gavin S. Banta _____
NOTARY PUBLIC

(Notary Seal)

3

DM#001686661.1

EXHIBIT "A"

*ALL TAXES HAVE BEEN PAID AND THE PROPER DOCUMENTARY STAMPS HAVE BEEN AFFIXED TO THE MORTGAGE OR MORTGAGES AND SECURITY AGREEMENT SECURING THIS PROMISSORY NOTE.*

$2,469,000.00

Dated as of: FEBRUARY 10, 2005
PALM BEACH County, Florida

## PROMISSORY NOTE

For value received, the undersigned GROVELAND ESTATES, LLC, a Florida limited liability company, whose address is 1401 East Broward Boulevard, Suite 208, Fort Lauderdale, FL 33301 (herein "Maker"), hereby promises to pay to the order of BFSPE, LLC, a Delaware limited liability company, whose address is 1401 East Broward Boulevard, Suite 201, Fort Lauderdale, FL 33301 (herein, along with each subsequent holder or holders of this Promissory Note, referred to as "Holder"), the principal sum TWO MILLION FOUR HUNDRED SIXTY NINE THOUSAND AND NO/100 --- ($2,469,000.00) --- DOLLARS, with interest thereon from the date or dates of disbursement of the aforesaid principal sum, to be paid in lawful money of the United States of America, which shall be legal tender in payment of all debts and dues, public and private, at the time of payment.

Interest shall accrue to the outstanding principal balance of this Promissory Note (this "Note") at a rate of EIGHT percent (8 %) per annum.

Interest only shall be due and payable in installments commencing on the LAST day of the first month following the initial disbursement of any portion of the aforesaid principal sum and continuing on the LAST day of each succeeding month thereafter during the term of this Note. This Note shall mature and the aforesaid principal sum together with all accrued and unpaid interest thereon, shall become due and payable in full on FEBRUARY 10, 2007 (the "Maturity Date"). Payments received under this Note shall be applied first to accrued and unpaid interest, and the balance, if any, to principal.

The payment of this Note is secured, *inter alia* by a Mortgage, Assignment of Lease and Security Agreement executed by Maker in favor of Holder (the "Mortgage"), which Mortgage by this reference is incorporated herein, together with such other instruments now or hereafter executed by Maker in favor of Holder or contemplated to be executed by Maker in favor of Holder in connection with the loan evidenced by this Note (collectively, the "Security Documents". This Note is issued pursuant to the Commitment Letter dated FEBRUARY 4, 2005, between Holder and Maker (herein referred to as the "Commitment"). Any default by Maker under the terms and conditions of the Mortgage, the Commitment and/or the Security Documents (collectively sometimes referred to as the "Loan Documents") shall constitute a default hereunder.

All payments due under this Note shall be payable at the office of Holder at 1401 East Broward Boulevard, Suite 201, Fort Lauderdale, FL 33301, or at such other place as Holder hereof may designate in writing. Payments of principal and interest shall not be characterized as received by Holder until the payment has been deposited for collection and this payment itself has been credited to Holder or Holder's account into which said payment has been deposited.

Maker agrees that $364,800.00 from the Loan Proceeds evidenced by this Note shall be held by Holder as interest reserve (the "Interest Reserve"). Provided that no Event of Default exists under the Loan Documents, the interest due on the Note shall be paid from a portion of the Interest Reserve by Holder, without the necessity of any instruction or request from Maker and without Maker having any obligation to make the interest payment while such funds remain in the Interest Reserve. Except as provided in this paragraph, the funds in the Interest Reserve shall never be used for any other purpose without the express written consent of Holder. Depletion of the Interest Reserve shall not release Maker from any of Borrower's obligations under the Loan Documents, including but not limited to the obligation to pay interest accruing under this note. After depletion of the Interest Reserve, or so long as any Event of Default has occurred and is

KELLEY, HERMAN & SMITH
1401 East Broward Boulevard – Suite 208 – Fort Lauderdale, FL 33301
Telephone: (954)462-7826 / Facsimile: (954)522-0398

Page 1 of 3

INITIALS

continuing, all interest payments under the Note shall be made by Maker using its own funds; provided that Holder, at its option and in its sole discretion, may obtain disbursements from the Interest Reserve notwithstanding such Event of Default. Upon the occurrence of an Event of Default, after lapse of any cure period with the Event of Default pending, the entire balance of the Interest Reserve shall be paid to Holder and applied to then outstanding balance of the Loan.

If default is made in the payment of any installment under this Note or if Maker violates any of the terms or breaches any of the conditions of the Loan Documents, the entire principal sum outstanding and all accrued interest shall at once become due and payable, without notice, at the option of the Holder of this Note. Failure to exercise this option shall not constitute a waiver of the right to exercise the same at any other time. The principal of this Note, and any part thereof, and all accrued interest, if any, shall bear interest at the maximum legal rate of interest chargeable under applicable law after maturity or default until paid. In the event there is no maximum rate applicable or in the event such maximum rate is otherwise indeterminable, it is agreed that such rate shall be eighteen percent (18.0%) per annum. All parties liable for the payment of this Note agree to pay Holder hereof reasonable attorneys' fees for the services of counsel employed after maturity or default to collect this Note, or to protect or enforce the security hereto, whether or not suit is brought.

The Holder of this Note may collect a late charge equal to five percent (5%) of any monthly payment of either principal or interest made more than ten (10) days after the due date thereof; provided, however, such late charge shall be waived by the Holder hereof to the extent the collection of such late charge would result in Maker paying interest in excess of the maximum rate of interest which is legally permitted under the laws of the State of Florida.

This Note and all sums due hereunder may be prepaid in whole or in part at any time without premium or penalty.

Nothing herein contained, nor any transaction related hereto, shall be construed or so operate to require Maker or any other person liable for repayment of same, to pay interest at a greater rate than is lawful in such case to contract for, or to make any payment, or to do any act contrary to law. Should any interest or other charges paid in connection with the loan evidenced by this Note by Maker or any parties liable for the payment of this Note result in the computation or earning of interest in excess of the maximum rate of interest which is legally permitted under the laws of the State of Florida, then any and all excess shall be and the same is hereby waived by Holder hereof, and any and all such excess paid shall be automatically credited first against and in reduction of the principal balance due under this Note or, at the option of Maker, paid by Holder to the Maker or any parties liable for the payment of this Note. If any clause or provision herein contained shall be unenforceable under applicable law, in whole or in part, then such clause or provision or part thereof shall only be inoperative as though not contained herein and the remainder of this Note shall remain operative and in full force and effect.

The remedies of Holder as provided herein and in the Loan Documents shall be cumulative and concurrent and may be pursued singularly, successively, or together at the sole discretion of Holder and may be exercised as often as occasion therefor shall arise. No act of omission or commission of Holder, including specifically any failure to exercise any right, remedy or recourse shall be effective unless it is set forth in a written document executed by Holder and then only to the extent specifically recited therein. A waiver or release with reference to one event shall not be construed as a bar to or as a waiver or release of any subsequent right, remedy, or recourse as to any subsequent event.

Maker and all sureties, endorsers, and guarantors of this Note hereby (a) waive demand, presentment for payment, notice of nonpayment, protest, notice of protest, and all other notice, filing of suit, and diligence in collecting this Note, in enforcing any of the security rights or in proceeding against any of the property covered by the Mortgage, (b) agree to any substitution, exchange, addition, or release of any such mortgaged property or the addition or release of any party or person primarily or secondarily liable thereon or hereunder,

KELLEY, HERMAN & SMITH
1401 East Broward Boulevard – Suite 206 – Fort Lauderdale, FL 33301
Telephone: (954)462-7808 / Facsimile: (954)522-0396

Page 2 of 3

INITIALS

(c) agree that Holder shall not be required first to institute any suit or to exhaust his, their or its remedies against Maker or any other person or party to become liable hereunder or against the mortgaged property in order to enforce payment of this Note, (d) consent to any extension, rearrangement, renewal, or postponement of time of payment of this Note and to any other indulgence with respect thereto without notice, consent or consideration to any of them, and (e) agree that, notwithstanding the occurrence of any of the foregoing (except the express written release by Holder of any such person), they shall be and remain jointly and severally, directly, and primarily liable for all sums due under this Note, the Mortgage, the Commitment and the other Security Documents.

In the event of any sale, transfer, conveyance or encumbrance of the property encumbered by the Mortgage(s) securing this Note or any interest therein, or the sale, conveyance or pledge of any interest of Maker to any other entity, individual, firm, partnership or corporation, without Holder's prior written consent, which consent may be withheld at the holder's sole and absolute discretion, the entire principal indebtedness hereunder, together with any and all interest accrued thereon, shall become due and payable immediately.

Whenever used in this Note, the singular number shall include the plural, the plural, the singular, and the masculine shall include the feminine and the neuter, and the words "Maker", "Co-Maker" and "Holder" shall be deemed to include Maker, Co-Maker and Holder named in the opening paragraph of this Note and their respective successors and assigns, if any. It is expressly understood and agreed that Holder shall never be construed for any purpose as a partner, joint venturer, co-principal, or associate of Maker, Co-Maker or of any person or party claiming by, through, or under Maker or Co-Maker in the conduct of their respective businesses.

This Note is executed and delivered in the State of Florida and shall be construed by and enforced in accordance with the laws of the State of Florida.

MAKER AND HOLDER HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE THE RIGHT EITHER MAY HAVE TO A TRIAL BY JURY IN RESPECT TO ANY LITIGATION BASED HEREON, OR ARISING OUT OF, UNDER OR IN CONNECTION WITH THE LOAN DOCUMENTS OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF EITHER PARTY. THIS PROVISION IS A MATERIAL INDUCEMENT FOR THE HOLDER EXTENDING CREDIT TO MAKER.

Dated and executed as of the 10 day of FEBRUARY, 2004.

GROVELAND ESTATES, LLC, a Florida limited liability company

By: _____
CONRAD WAGNER, Managing Member

KELLEY, HERMAN & SMITH
1401 East Broward Boulevard - Suite 206 - Fort Lauderdale, FL 33301
Telephone: (954)462-7600 / Facsimile: (954)522-0288

Page 3 of 3                                        INITIALS: _____

CFN 2005031025
BK 02772 Pgs 1010 - 1019; (10pgs)
DATE: 03/03/2005 02:45:40 PM
JAMES C. WATKINS, CLERK OF COURT
LAKE COUNTY
RECORDING FEES 86.50
INTO DOC 8,642.50
DINARGIENCE 4,938.00

This instrument prepared by:
Simon Herman, Esq.
Kelley, Herman & Smith
1401 East Broward Boulevard - Suite 206
Fort Lauderdale, FL 33301

## MORTGAGE, ASSIGNMENT OF LEASES AND SECURITY AGREEMENT

THIS MORTGAGE, ASSIGNMENT OF LEASES AND SECURITY AGREEMENT (this "Mortgage") is made as of the 10 day of FEBRUARY, 2005, by and between GROVELAND ESTATES, LLC, a Florida limited liability company ("Mortgagor"), and BFSPE, LLC, a Delaware limited liability company ("Mortgagee"), the address of which is 1401 East Broward Boulevard, Suite 201, Fort Lauderdale, FL 33301.

### WITNESSETH:

WHEREAS, Mortgagor is indebted to Mortgagee in the principal sum of TWO MILLION FOUR HUNDRED SIXTY NINE THOUSAND AND NO/100 — ($2,469,000.00) — DOLLARS, together with interest thereon (the "Loan"), as evidenced by that certain Promissory Note executed by Mortgagor and delivered to Mortgagee (the "Note"), which by reference is made a part hereof to the same extent as though set out in full herein;

NOW, THEREFORE, to secure the performance by Mortgagor of all covenants and conditions of this Mortgage and the Note, and in all other instruments and documents executed, or to be executed, in connection with the Loan, as well as the Commitment Letter dated FEBRUARY 4, 2005, pursuant to which the Loan is extended (the "Commitment"), (this Mortgage, the Note, the Commitment and all such other documents executed in connection herewith, are sometimes referred to herein, collectively, as the "Loan Documents"), and in order to charge the properties, interests and rights hereinafter described with such payment and performance and to secure additional advances, renewals and extensions thereof and for and in consideration of the sum of Ten and No/100 ($10.00) Dollars, Mortgagor does hereby mortgage, sell, pledge and assign to Mortgagee:

### THE MORTGAGED PROPERTY

(A)    All of that parcel of land as more particularly described in Exhibit "A" attached hereto and made a part hereof, to have and to hold the same, together with all the improvements now or hereafter erected on such property and all fixtures now or hereafter attached thereto, together with each and every of the tenements, hereditaments, easements, rights, powers, privileges, immunities and appurtenances thereunto belonging or in anywise appertaining and the reversion and reversions, remainder and remainders, and also all the estate, right, title, interest, homestead, right of dower, separate estate, property, possession and claim whatsoever in law as well as in equity of Mortgagor of, in and to the same in every part and parcel thereof unto Mortgagee in fee simple.

(B)    Together with a security interest in all personal property and fixtures affixed to or located on the property described in paragraph (A).

(C)    Together with all rents, issues, profits, revenue, income and other benefits from the property described in paragraph (A) hereof to be applied to the indebtedness secured hereby, provided however, that permission is hereby given to Mortgagor, so long as no default has occurred hereunder, or under any of the Loan Documents, to collect, receive, and use such benefits from the property as they become due and payable, but not in advance thereof.

KELLEY, HERMAN & SMITH
1401 East Broward Boulevard - Suite 206 - Fort Lauderdale, FL 33301
Telephone: (954)463-7555 / Facsimile: (954)523-0305

Page 1 of 10

(D)    Everything referred to in paragraphs (A), (B) and (C) hereof and any additional property hereafter acquired by Mortgagor and subject to the lien of this Mortgage or any part of these properties is herein referred to as the "Mortgaged Property".

PROVIDED ALWAYS, that if Mortgagor shall pay to Mortgagee all payments due under the Note at the times and in the manner stipulated therein, and in all other instruments securing the Note, including renewals, extensions or modifications thereof, and fully perform the terms, covenants and conditions of this Mortgage and the other Loan Documents to be kept performed or observed by Mortgagor, then this Mortgage shall cease and be void, but shall otherwise remain in full force and effect.

Mortgagor covenants and agrees with Mortgagee as follows:

1.    Compliance with Note and Mortgage; Warranty of Title. Mortgagor shall fully comply with all provisions of the Note, this Mortgage, and all of the other Loan Documents, and shall promptly pay to Mortgagee the principal, together with interest thereon, due under the Note and all other sums required to be paid by Mortgagor pursuant to the provisions of the Note, this Mortgage, and all of the other Loan Documents. Mortgagor is indefeasibly seized of the Mortgaged Property in fee simple and Mortgagor has lawful authority to convey, manage, and encumber the same as provided by this Mortgage, and does hereby so warrant. The sums advanced under the terms of the Loan Documents which sums are secured by this Mortgage shall mature and be due and payable in full on FEBRUARY 10, 2007.

2.    Payment of Taxes and Liens. Mortgagor shall pay all the taxes, assessments, levies, liabilities, obligations and encumbrances of every nature now on the Mortgaged Property or that hereafter may be imposed, levied or assessed upon the Note, this Mortgage, any of the other Loan Documents, the Mortgaged Property or upon the indebtedness secured hereby. All such payments shall be made when due and payable according to law before they become delinquent and before any interest attaches or any penalty is incurred. Insofar as any indebtedness is of record the same shall be promptly satisfied and evidence of such satisfaction shall be given to Mortgagee. If an event of a default occurs under the Loan Documents, then, if required by the Mortgagee, in Mortgagee's sole discretion, Mortgagor shall pay to Mortgagee on the date of such regular installment of principal and interest as required by the Note secured hereby (or on the first day of each month if payments under the Note are due other than monthly), until the Note is fully paid, an amount equal to one-twelfth (1/12) of the yearly taxes and assessments as estimated by the Mortgagee, or such other proportionate share thereof estimated by Mortgagee, to be sufficient to enable the Mortgagee to pay at least thirty (30) days before they become due, all taxes, assessments and other similar charges against the Mortgaged Property or any part thereof. Such added payment shall not be, nor be deemed to be, trust funds, but may be commingled with the general funds of the Mortgagee, and no interest shall be payable to Mortgagor with respect thereto. Upon demand of the Mortgagee, the Mortgagor agrees to deliver to the Mortgagee such additional monies as are required to make up any deficiencies in the amounts necessary to enable the Mortgagee to pay such taxes, assessments or similar charges. In the event of a default by the Mortgagor in the performance of any of the terms, covenants and conditions of this Mortgage, the Note, or any of the other Loan Documents, the Mortgagee may apply to the reduction of the principal sum or any other sum secured hereby in such manner as the Mortgagee shall determine, any amount under this Paragraph 2 remaining to the Mortgagor's credit.

3.    Insurance. Mortgagor shall keep the Mortgaged Property and the improvements now existing or hereafter erected on the Mortgaged Property insured as may be required from time to time by Mortgagee against loss by fire, other hazards and contingencies in such amounts and for such periods as may be required by Mortgagee. Mortgagor shall pay promptly, when due, any premiums on such insurance. All insurance shall be carried with companies approved by Mortgagee and the policy and renewals thereof shall be held by Mortgagee and have attached thereto loss payable clauses in favor and in form acceptable to Mortgagee. In the event of loss, Mortgagor shall give immediate notice by mail to Mortgagee and Mortgagee may make proof of loss if not made promptly by Mortgagor. Each insurance company concerned is hereby authorized and directed to make payments for such loss directly to Mortgagee instead of either to Mortgagor or Mortgagor and Mortgagee jointly. Insurance proceeds or any part thereof may be applied by Mortgagee at its option, after deducting therefrom all its expenses, including, without limitation, attorney's fees, either to the reduction of the indebtedness hereby secured or to the restoration or repair of the property damaged. Mortgagee is hereby authorized, at its option, to settle and compromise any claims, awards, damages, rights of action and proceeds, and any other payment or relief under any insurance policy. In the event of foreclosure

KELLEY, HERMAN & SMITH
1401 East Broward Boulevard – Suite 206 – Fort Lauderdale, FL 33301
Telephone: (954)463-7805 / Facsimile: (954)522-0396

Page 2 of 18

of this Mortgage or other transfer of title to the Mortgaged Property in extinguishment of the indebtedness secured hereby, all right, title, and interest of Mortgagor in and to any insurance policies then in force shall pass to the purchaser or grantee. If an event of default occurs under the Loan Documents, then Mortgagee may, at its option, require Mortgagor to deposit with Mortgagee on the first day of each month, in addition to making payments of principal and interest, until the Note is fully paid, an amount equal to one-twelfth (1/12) of the yearly premiums for all insurance. Such deposits shall not be, nor be deemed to be, trust funds, but may be commingled with the general funds of Mortgagee, and no interest shall be payable in respect thereof. Upon demand by Mortgagee, Mortgagor shall deliver to Mortgagee such additional monies as are necessary to make up any deficiencies in the amounts necessary to enable Mortgagee to pay such premiums when due. In the event of default under any of the terms, covenants and conditions in the Note, this Mortgage, or any of the other Loan Documents to be performed or observed by Mortgagor, Mortgagee may apply to the reduction of the sums secured hereby, in such manner as Mortgagee shall determine, any amount under this paragraph remaining to Mortgagor's credit and any return premium received from cancellation of any insurance policy by Mortgagee upon foreclosure of this Mortgage.

4.    **Condemnation.** If the Mortgaged Property or any part thereof shall be damaged or taken through condemnation (which term when used herein shall include any damage or taking by any governmental authority or any other authority authorized by the laws of the State of Florida or the United States of America to so damage or take, and any transfer by private sale in lieu thereof), either temporarily or permanently, the entire indebtedness and other sums secured hereby shall, at the option of Mortgagee, become immediately due and payable. Mortgagee shall be entitled to all condemnation awards, damages, claims, rights of action and proceeds of, or on account of any damage or taking through condemnation and is hereby authorized, at its option, to commence, appear in and prosecute, in its own or Mortgagor's name, any action or proceeding relating to any condemnation, and to settle or compromise any claim in connection therewith. All such condemnation awards, damages, claims, rights of action and proceeds, and any other payments or relief, and the right thereto, are hereby assigned by Mortgagor to Mortgagee and Mortgagee, after deducting therefrom all its expenses, including, without limitation, attorneys' fees, may release any monies so received by it without affecting the lien of this Mortgage or may apply the same in such manner as Mortgagee shall determine, to the reduction of the sums secured hereby and to any prepayment charge provided in the Note, this Mortgage, or any of the other Loan Documents. Any balance of such monies then remaining shall be paid to Mortgagor. Mortgagor agrees to execute such further assignments of any condemnation awards, damages, claims, rights of action and proceeds as Mortgagee may require.

5.    **Care of Mortgaged Property.** Mortgagor shall not remove or demolish any building or other property forming a part of the Mortgaged Property without the prior written consent of Mortgagee. Mortgagor shall not permit, commit, or suffer any waste, impairment or deterioration of the Mortgaged Property or any part thereof, and shall keep the same and all improvements thereon in good condition and repair. Mortgagor shall notify Mortgagee in writing within five (5) days of any damage or impairment of the Mortgaged Property. Mortgagee may, at Mortgagee's discretion, have the Mortgaged Property inspected at any time and Mortgagor shall pay all costs incurred by Mortgagee in executing such inspection.

6.    **Mortgagee's Right to Make Certain Payments.** In the event Mortgagor fails to pay or discharge any and all taxes, assessments, levies, liabilities, obligations and encumbrances in any way affecting or appertaining to the Mortgaged Property or any of the Loan Documents or the indebtedness secured hereby, or fails to keep the Mortgaged Property insured or to deliver the policies, premiums paid, or fails to repair the Mortgaged Property as herein agreed, Mortgagee may, at its option, pay or discharge such taxes, assessments, levies, liabilities, and obligations and encumbrances, or any part thereof, procure and pay for such insurance or make and pay for such repairs. Mortgagee shall have no obligation on its part to determine the validity or necessity of any such payment and any such payment shall not waive or affect any option, lien, equity or right of Mortgagee under or by virtue of this Mortgage or any of the Loan Documents. The full amount of each and every such payment shall be immediately due and payable and shall bear interest from the date thereof until paid at the Default Rate, as hereinafter defined, and together with such interest, shall be secured by the lien of this Mortgage and any other instrument securing the Note. Nothing herein contained shall be construed as requiring Mortgagee to advance or expend monies for any of the purposes mentioned in this paragraph.

7.    **Payment of Expenses.** Mortgagor shall pay all the costs, charges and expenses, including, without limitation, reasonable attorneys' fees, disbursements and cost of abstracts of title, incurred or paid at any time by Mortgagee due to the failure on the part of Mortgagor to promptly and fully perform, comply with

KELLEY, HERMAN & SMITH
1401 East Broward Boulevard – Suite 206 – Fort Lauderdale, FL 33301
Telephone: (954)462-7903 / Facsimile: (954)522-0396

Page 3 of 10

and abide by each and every stipulation, agreement, condition and covenant of the Note, this Mortgage, and all of the other Loan Documents. Such costs, charges and expenses shall be immediately due and payable, whether or not there be notice, demand, attempt to collect or suit pending. The full amount of each and every such payment shall bear interest from the date thereof until paid at the Default Rate, as hereinafter defined. All such costs, charges and expenses so incurred or paid together with such interest, shall be secured by the lien of this Mortgage and any other instrument securing the Note.

8.   **After Acquired Property.** The lien of this Mortgage shall automatically attach, without further act, to all after acquired property of whatever kind located in, on, attached to, or used, or intended to be used, in connection with or in the operation of the Mortgaged Property.

9.   **Additional Documents.** At all times during which this Mortgage is in effect, upon Mortgagee's request, Mortgagor shall make, execute and deliver or cause to be made, executed and delivered to Mortgagee, and, where appropriate, shall cause to be recorded or filed and thereafter to be re-recorded or refiled at such time and in such places as shall be deemed desirable by Mortgagee, any and all such further mortgages, instruments of further assurance, certificates and other documents as Mortgagee may consider necessary or desirable in order to effectuate, complete, enlarge, perfect, or to continue and preserve the obligations of Mortgagor under the Note, this Mortgage, and all of the other Loan Documents, and the lien of this Mortgage as a valid and prior lien upon all the Mortgaged Property. Upon any failure by Mortgagor to do so, Mortgagee may make, execute, record, file, re-record, or refile any and all such mortgages, instruments, certificates and documents for and in the name of Mortgagor. Mortgagor hereby irrevocably appoints Mortgagee as agent and attorney-in-fact of Mortgagor, which appointment is coupled with an interest, to do all things necessary to effectuate or assure compliance with this paragraph.

10.   **Event of Default.** Any one of the following shall constitute an event of default hereunder.

(a)   Failure by Mortgagor to pay, within ten (10) days of the due date, any installments of principal or interest due under the Note, or any deposits for taxes and assessments or insurance premiums due hereunder, or any other sums to be paid by Mortgagor under the Note, this Mortgage, or any of the other Loan Documents.

(b)   Failure by Mortgagor to duly keep, perform and observe any other covenant, condition or agreement in the Note, this Mortgage, or any of the other Loan Documents.

(c)   If either Mortgagor or any guarantor or endorser of the Note: (i) files a voluntary petition in bankruptcy, (ii) is adjudicated a bankrupt or insolvent, or (iii) dies or is adjudicated incompetent, provided, however, the death or adjudication of incompetency of a guarantor who is a natural person shall not be an event of default if within 90 days of death or adjudication of incompetency of such guarantor, the Mortgagor causes the estate of such guarantor to acknowledge such guarantor's obligations to the Mortgagee and Mortgagor provides an additional guaranty reasonably acceptable to the Mortgagee; or  (iv) dissolves, ceases to exist or loses its good standing status; or (v) files any petition or answer seeking or acquiescing in any reorganization, management, composition, readjustment, liquidation, dissolution or similar relief for itself under any law relating to bankruptcy, insolvency or other relief for debtors, or (vi) seeks or consents to or acquiesces in the appointment of any trustee, receiver, master or liquidator of itself or of all or any substantial part of the Mortgaged Property or of any or all of the rents, revenues, issues, earnings, profits or income thereof, or (vii) makes any general assignment for the benefit of creditors, or (viii) makes any admission in writing of its inability to pay its debts generally as they become due; or (ix) a court of competent jurisdiction enters an order, judgment or decree approving a petition filed against Mortgagor or any guarantor or endorser of the Note, seeking any reorganization, arrangement, composition, readjustment, liquidation, dissolution or similar relief under any present or future federal, state, or other statute, law or regulation relating to bankruptcy, insolvency or other relief for debtors, which order, judgment or decree remains unvacated and unstayed for an aggregate of sixty (60) days whether or not consecutive from the date of entry thereof; or (x) any trustee, receiver or liquidator of Mortgagor of all or any substantial part of the Mortgaged Property or of any or all of the rents, revenues, issues, earnings, profits or income thereof, is appointed without the prior written consent of Mortgagee, which appointment shall remain unvacated and unstayed for an aggregate of sixty (60) days whether or not consecutive.

(d)   Any breach of any warranty or material untruth of any representation of Mortgagor contained in the Note, this Mortgage, or any of the other Loan Documents.

**KELLEY, HERMAN & SMITH**
1401 East Broward Boulevard – Suite 206 – Fort Lauderdale, FL 33301
Telephone: (954)462-7806 / Facsimile: (954)522-0398

**Page 4 of 16**

(e)    The occurrence of any default under the terms of any mortgage or other security instrument which creates a lien or other security interest on or in the Mortgaged Property.

(f)    Any sale or conveyance or pledge of the Mortgaged Property or any portion thereof by the Mortgagor.

(g)    Any default in connection with any on going borrowings, which the Mortgagor or any guarantor hereof may have outstanding from the Mortgagee or any of its affiliates during the pendency of this transaction and, notwithstanding anything to the contrary contained herein, the Mortgagee shall not be obligated to release any of the Mortgaged Property held as collateral so long as any loan given by the Mortgagee to the Mortgagor or any guarantor is in default.

(h)    Mortgagee determines in good faith, in its sole discretion, that the prospects for payment or performance of the terms, covenants and conditions of the Loan Documents are impaired or there has occurred a material adverse change in the business prospects of Mortgagor, financial or otherwise.

(i)    If the Mortgagor, pursuant to Florida Statutes 697.04 (1)(b), as amended from time to time, shall file for record a notice limiting the maximum amount which may be secured by this Mortgage. Mortgagor shall have 30 days to cure any non-monetary defaults.

11.    Acceleration. If an event of default shall have occurred, Mortgagee may declare the outstanding principal amount of the Note and all interest accrued thereon, and all other sums secured hereby, to be due and payable immediately. Upon such declaration, such principal and interest and other sums shall immediately be due and payable without demand or notice.

12.    Remedies after Default. Upon the occurrence of a default hereunder, Mortgagee may proceed by suit or suits at law or in equity or by any other appropriate proceeding or remedy to: (i) enforce payment of the Note or the performance of any term hereof or any other right; (ii) foreclose this Mortgage and sell, as an entirety or in separate lots or parcels, the Mortgaged Property under the judgment or decree of a court or courts of competent jurisdiction; (iii) collect all rents, issues, profits, revenue, income and other benefits from the Mortgaged Property; (iv) appoint a receiver to enter upon and take possession of the Mortgaged Property and to collect all rents, issues, profits, revenue, income, and other benefits thereof and apply the same as a court may direct and such receiver shall have all rights and powers permitted under law; and (v) pursue any other remedy available to it including, but not limited to, taking possession of the Mortgaged Property without notice or hearing to Mortgagor. Mortgagee shall take action either by such proceedings or by the exercise of its power with respect to entry or taking possession, or both, as Mortgagee may determine.

13.    Assignment of Leases. As further security for the Loan, Mortgagor hereby transfers, assigns and sets over to Mortgagee, its successors and assigns, all the right, title, interest and privilege which Mortgagor, as lessor, has and may have in the leases (collectively, the "Leases") now existing or hereafter made and affecting the Mortgaged Property, or any part thereof, as the Leases may have been or may, from time to time, be hereafter modified, expanded and renewed, with all rents, income and profits due and becoming due therefrom. Mortgagor will, on request of Mortgagee, execute and deliver assignments in recordable form (together with UCC-1 Financing Statements) of any future Leases affecting any part of the Mortgaged Property. In addition, Mortgagor hereby assigns to Mortgagee any award made hereafter to it in any court procedure involving any of the Leases in any bankruptcy, insolvency or reorganization proceedings in any state or federal court, and any and all payments made by lessees in lieu of rent. Mortgagor hereby grants to Mortgagee an irrevocable power-of-attorney, coupled with an interest, to appear in any action and/or to collect any such award or payment.

The collection of rents or payments under the Leases hereby assigned shall not constitute a waiver of any rights of Mortgagee under the terms of this Mortgage, the Note, or any of the other Loan Documents. It is expressly understood and agreed by Mortgagor and Mortgagee that before any default occurs under the terms of this Mortgage, Mortgagor shall have the right to collect said rents, income and profits from the Leases and to retain, use and enjoy the same.

In the event of default in the performance of any of the terms and conditions of the Note, this Mortgage, or any of the Loan Documents, Mortgagor hereby authorizes Mortgagee, at its option, to (a) enter

KELLEY, HIRSMAN & SMITH
1401 East Broward Boulevard - Suite 206 - Fort Lauderdale, FL 33301
Telephone: (954)462-7806 / Facsimile: (954)422-0358

Page 5 of 10

and take possession of the Mortgaged Property; (b) manage and operate the Mortgaged Property; (c) collect all or any rents accruing therefrom and from the Leases; (d) let or relet the Mortgaged Property or any part thereof; (e) cancel and modify leases, evict tenants, bring or defend any suits in connection with the possession of the Mortgaged Property in its own name or Mortgagor's name; (f) make repairs as Mortgagee deems appropriate; and (g) perform such other acts in connection with the management and operation of the Mortgaged Property as Mortgagee, in its sole discretion, deems proper.

The receipt by Mortgagee of any rents, issues or profits pursuant hereto after the institution of foreclosure proceedings under the Mortgage shall not cure such default nor affect such proceedings or any sale pursuant thereto.

Mortgagee shall not be obligated to perform or discharge any obligation or duty to be performed or discharged by Mortgagor under any of the Leases, and Mortgagor hereby agrees to indemnify Mortgagee for, and to hold Mortgagee harmless from, any and all liability arising from any of the Leases, or Mortgagee's possession, operation, management or maintenance of the Mortgaged Property, and the provisions hereof shall not place responsibility for the control, care, management or repair of the Mortgaged Property upon Mortgagee, or make Mortgagee responsible or liable for any negligence in the management, operation, upkeep, repair or control of the Mortgaged Property, resulting in loss, injury or death to any person.

14.    No Waiver. No delay or omission of Mortgagee or of any holder of the Note to exercise any right, power or remedy accruing upon the occurrence of any default shall exhaust or impair any such right, power or remedy or shall be construed to waive any event of default or to constitute acquiescence therein.

15.    Non-Exclusive Remedies. No right, power or remedy conferred upon or reserved to Mortgagee by the Note, this Mortgage, or any of the other Loan Documents is exclusive of any other right, power or remedy, but each and every such right, power and remedy shall be cumulative and concurrent and shall be in addition to any other right, power and remedy given hereunder, under the Note, or any of the other Loan Documents, now or hereafter existing at law, in equity or by statute.

16.    Successors and Assigns Bound. Whenever one of the parties hereto is named or referred to herein, the heirs, successors and assigns of such party shall be included and all covenants and agreements contained in this Mortgage, by or on behalf of Mortgagor or Mortgagee, shall bind and inure to the benefits of their respective heirs, successors and assigns, whether or not so expressed.

17.    Miscellaneous. In the event that any of the covenants, agreements, terms or provisions contained in the Note, this Mortgage, or any of the other Loan Documents shall be invalid, illegal or unenforceable in any respect, the validity of the remaining covenants, agreements, terms or provisions contained herein, in the Note, or any of the other Loan Documents shall in no way be affected, prejudiced or disturbed thereby.

18.    Attorneys' Fees. The term "attorney's fees" as used in this Mortgage includes any and all legal fees of whatever nature including, but not limited to, fees resulting from any appeal of an interlocutory order or final judgment or any other appellate proceeding arising out of any litigation.

19.    Future Advances. This Mortgage is given to secure not only the existing indebtedness, but also such future advances, whether such advances are obligatory or are to be made at the option of Mortgagee, or otherwise, as are made within fifteen years from the date hereof, to the same extent as if such future advances were made on the date of the execution of this Mortgage. The total amount of indebtedness that may be so secured may decrease or increase from time to time, but the total unpaid balance so secured at one time shall not exceed twice the face amount of the Note, plus interest thereon, and any disbursements made for the payment of taxes, levies or insurance on the Mortgaged Property, with interest on such disbursements at the Default Rate, as hereafter defined.

20.    Obligation of Mortgagor. Mortgagor shall pay the cost of releasing or satisfying this Mortgage of record.

21.    No Transfer. It is understood and agreed by Mortgagor that as part of the inducement to Mortgagee to make the loan evidenced by the Note, Mortgagee has considered and relied on the credit worthiness and reliability of Mortgagor. Mortgagor covenants and agrees not to sell, convey, transfer, or further

KELLEY, HERMAN & SMITH
1401 East Broward Boulevard – Suite 206 - Fort Lauderdale, FL 33301
Telephone: (954)462-7806 / Facsimile: (954)522-0396

Page 8 of 10

encumber any interest in or any part of the Mortgaged Property without the prior written consent of the Mortgagee, and any such sale, conveyance, transfer, or encumbrance made without Mortgagee's prior written consent shall constitute an event of default hereunder. It is further understood, and agreed that any sale, conveyance or pledge of any interest of the Mortgagor to any other entity, individual, firm, partnership or corporation without the Mortgagee's prior written consent shall constitute an event of default hereunder. A contract to deed or agreement for deed or assignment of beneficial interest in any trust shall constitute a transfer pursuant to the provisions of this Paragraph. If any person or entity should obtain any interest in all or any part of the Mortgaged Property pursuant to the execution or enforcement of any lien, or pursuant to the execution or enforcement of any lien, security interest or other right, whether superior, equal or subordinate to this Mortgage or the lien hereof, such event shall be deemed to be a transfer by Mortgagor and an event of default hereunder.

22.  **Default Rate.** The Default Rate shall be the highest rate permitted by applicable law.

23.  **Hazardous or Toxic Materials.** The Mortgagor warrants and represents that the Mortgaged Property has not in the past been used, is not presently being used, and will not in the future be used for the handling, storage, transportation or disposal of hazardous or toxic materials. The Mortgagor does hereby indemnify and holds harmless the Mortgagee from and against any loss to the Mortgagee (including without limitation attorneys' fees) incurred by the Mortgagee as a result of such past, present or future use, handling, storage, transportation, or disposal of hazardous or toxic materials. The Mortgagee, at the Mortgagee's sole option, at any time, may obtain, at the Mortgagor's expense, a report or reports from reputable environmental consultants of the Mortgagee's choice indicating whether the Mortgaged Property has been or at any time is being used for the handling, storage, transportation, or disposal of hazardous or toxic materials. In the event the Mortgagee requests such a report and said report indicates such past or present use, handling, storage, transportation, or disposal, the Mortgagee, in its sole discretion, may require that all violations of law with respect to hazardous or toxic materials be corrected forthwith and/or that the Mortgagor obtain all necessary environmental permits. Failure of the Mortgagor to promptly take such curative action as required by the Mortgagee may, at the option of the Mortgagee, be deemed an event of default under Paragraph 10 above. Notwithstanding the fact that the Mortgagee may have obtained such a report at or prior to the execution hereof, the Mortgagee may, from time to time, obtain additional reports if it deems, in its sole discretion, that such reports are necessary or appropriate.

24.  **Subordination.** Provided there has not been nor there exists a default under the terms of the Note, this Mortgage or any of the other Loan Documents; and further provided that the First Mortgage in favor of Mortgagee in the original principal amount of $12,000,000.00 of even date herewith is paid in full on or before August 19, 2008, Mortgagee agrees that Mortgagee will upon Mortgagor's prior written request therefore, subordinate this Mortgage to a First Mortgage Lender ("Senior Lender") with an original principal balance not to exceed $16,000,000.00 upon terms and conditions acceptable to Mortgagee at Mortgagee's sole discretion for the purpose of refinancing the First Mortgage and construction of specific improvements to the mortgaged property acceptable to the Mortgagee in its sole discretion provided that the Senior Lender is approved by Mortgagee, which approval may be denied at Mortgagee's sole and absolute discretion and further provided that Senior Lender, Mortgagee and Mortgagor enter into a mortgage subordination agreement in form and substance satisfactory to Mortgagee in Mortgagee's sole and absolute discretion.

25.  **Second Mortgage.** This is a Second Mortgage subject and inferior to that certain First Mortgage of even date herewith in favor of BFSPE, LLC, a Delaware limited liability company. Mortgagor herein agrees that any default under the terms of the First Mortgage shall constitute an event default under the terms of this Mortgage.

26.  **Releases.** So long as there is a First Mortgage of record for construction of improvements on the Property, Mortgagee shall release individual lots ("Lot(s)") from the lien of this Mortgage, upon its sale by Mortgagor, provided solely that the particular Lot to be released has been sold and the First Mortgage-holder has released, or simultaneously therewith releases, the Lot from the lien of the First Mortgage; and further provided that the First Mortgage holder has received a release payment for the Lot at least equal to the minimum release payment set forth in the First Mortgage Loan Documents; and further provided that Mortgagee has received a release payment at least equal to the difference between 90% of the gross sales proceeds of each Lot and the release payment received by the First Mortgage holder. Upon payment in full of the First Mortgage and provided there has not been nor there exists a default under the terms of the Note, this Mortgage or any of the other Loan Documents, the Mortgagee will release individual Lots from the Lien

KELLEY, HERMAN & SMITH
1401 East Broward Boulevard - Suite 206 - Fort Lauderdale, FL 33301
Telephone: (954)462-7806 / Facsimile: (954)522-0396

Page 7 of 16

of this Mortgage upon its sale by Mortgagor, provided that Mortgagee has received a principal repayment at least equal to 50% of the Gross Sales Proceeds from the sale of the applicable Lot.

[SIGNATURES ON THE FOLLOWING PAGE]

KELLEY, HERMAN & SMITH
1401 East Broward Boulevard – Suite 206 – Fort Lauderdale, FL 32301
Telephone: (954)462-7808 / Facsimile: (954)522-0386

Page 8 of 10

IN WITNESS WHEREOF, this instrument has been executed on the date first above written.

Signed, sealed and delivered
in the presence of:

BORROWER:

GROVELAND ESTATES, LLC, a Florida limited liability
company

By: _____
    CONRAD WAGNER, Managing Member

Address:    1401 East Broward Boulevard
            Suite 206
            Fort Lauderdale, FL 33301

STATE OF FLORIDA
COUNTY OF PALM BEACH

    I HEREBY CERTIFY that on this day, before me, an officer duly authorized in the State and County aforesaid to take acknowledgments, appeared CONRAD WAGNER, as Managing Member of GROVELAND ESTATES, LLC, a Florida limited liability company, personally known to me to be the person(s) described in and who executed the foregoing instrument or who produced _____ as identification and acknowledged before me that HE executed the same.

    WITNESS my hand and official seal in the County and State last aforesaid this 18 day of FEBRUARY, 2005.



                    NOTARY PUBLIC
                    _____
                    Printed Name of Notary Public

My Commission expires:              NOTARY SEAL

The quality of this image
is equivalent to the quality
of the original document.

KELLEY, HERMAN & SMITH
1401 East Broward Boulevard – Suite 206 - Fort Lauderdale, FL 33301
Telephone: (954)522-7806 / Facsimile: (954)522-0385

Page 9 of 19

EXHIBIT "A"

**PARCEL 1:**

The West ½ of the Southeast ¼ of the Southwest ¼, lying Southeasterly of C.R. 565, in Section 1, Township 22 South, Range 24 East, Lake County, Florida.

ALSO

The East ½ of the Southeast ¼ of the Southwest ¼ in Section 1, Township 22 South, Range 24 East, Lake County, Florida

Tracts 53 and 54, Groveland Farms, Section 1, Township 22 South, Range 24 East, recorded in Plat Book 2, Pages 10 and 11, Public Records of Lake County, Florida.

**PARCEL 2:**

Tracts 59 and 60, in Section 1, Township 22 South, Range 24 East, in Groveland Farms, recorded in Plat Book 2, Pages 10 and 11, Public Records of Lake County, Florida.

**PARCEL 3:**

Parcel A: The Southwest ¼ of the Northwest ¼ of the Southeast ¼, Section 1, Township 22 South, Range 24 East, Lake County, Florida.

Parcel B: The Northwest ¼ of the Northwest of the Southeast ¼, Section 1, Township 22 South, Range 24 East, Lake County, Florida.

Parcel C: The West ¼ of the Northeast ¼ of the Northwest ¼ of the Southeast ¼, Section 1, Township 22 South, Range 24 East, Lake County, Florida.

Parcel D: The South ½ of the West ¼ of the Northeast ¼ East of Road, Section 1, Township 22 South, Range 24 East, Lake County, Florida.

Parcel E: The South ½ of the Southeast ¼ of the Northwest ¼ East of Road, Section 1, Township 22 South, Range 24 East, Lake County, Florida.

Parcel F: All of Tracts 35, 45 and 46, lying East of C.R. Road 565, and that part of the East 297 feet of Tract 36, lying East of C.R. Road 565, all lying and being in Section 1, Township 22 South, Range 24 East, Groveland Farms, recorded in Plat Book 2, Pages 10 and 11, Public Records of Lake County, Florida.

P:\WPDOCS\ANDY\Wagner\Groveland Easter\Legal.doc

EXHIBIT "C"

*ALL TAXES HAVE BEEN PAID AND THE PROPER DOCUMENTARY STAMPS HAVE BEEN AFFIXED TO THE MORTGAGE OR MORTGAGES AND SECURITY AGREEMENT SECURING THIS PROMISSORY NOTE.*

$12,000,000.00

Dated as of: FEBRUARY 10, 2005
PALM BEACH County, Florida

### PROMISSORY NOTE

For value received, the undersigned **GROVELAND ESTATES, LLC**, a Florida limited liability company, whose address is **1401 East Broward Boulevard, Suite 206, Fort Lauderdale, FL 33301** (herein "Maker"), hereby promises to pay to the order of **BFSPE, LLC**, a Delaware limited liability company, whose address is 1401 East Broward Boulevard, Suite 201, Fort Lauderdale, FL 33301 (herein, along with each subsequent holder or holders of this Promissory Note, referred to as "Holder"), the principal sum **TWELVE MILLION AND NO/100 --- ($12,000,000.00) --- DOLLARS**, with interest thereon from the date or dates of disbursement of the aforesaid principal sum, to be paid in lawful money of the United States of America, which shall be legal tender in payment of all debts and dues, public and private, at the time of payment.

Interest shall accrue to the outstanding principal balance of this Promissory Note (this "Note") at a rate of **EIGHT** percent (8 %) per annum.

Interest only shall be due and payable in installments commencing on the **LAST** day of the first month following the initial disbursement of any portion of the aforesaid principal sum and continuing on the **LAST** day of each succeeding month thereafter during the term of this Note. This Note shall mature and the aforesaid principal sum together with all accrued and unpaid interest thereon, shall become due and payable in full on **FEBRUARY 10, 2007** (the "Maturity Date"). Payments received under this Note shall be applied first to accrued and unpaid interest, and the balance, if any, to principal.

The payment of this Note is secured, inter alia by a Mortgage, Assignment of Lease and Security Agreement executed by Maker in favor of Holder (the "Mortgage"), which Mortgage  by this reference is incorporated herein, together with such other instruments now or hereafter executed by Maker in favor of Holder or contemplated to be executed by Maker in favor of Holder in connection with the loan evidenced by this Note (collectively, the "Security Documents"). This Note is issued pursuant to the Commitment Letter dated **FEBRUARY 4, 2005**, between Holder and Maker (herein referred to as the "Commitment"). Any default by Maker under the terms and conditions of the Mortgage, the Commitment and/or the Security Documents (collectively sometimes referred to as the "Loan Documents") shall constitute a default hereunder.

All payments due under this Note shall be payable at the office of Holder at 1401 East Broward Boulevard, Suite 201, Fort Lauderdale, FL 33301, or at such other place as Holder hereof may designate in writing. Payments of principal and interest shall not be characterized as received by Holder until the payment has been deposited for collection and the payment itself has been credited to Holder or Holder's account into which said payment has been deposited.

Maker agrees that $468,000.00 from the Loan Proceeds evidenced by this Note shall be held by Holder as interest reserve (the "Interest Reserve"). Provided that no Event of Default exists under the Loan Documents, the interest due on the Note shall be paid from a portion of the Interest Reserve by Holder, without the necessity of any instruction or request from Maker and without Maker having any obligation to make the interest payment while such funds remain in the Interest Reserve. Except as provided in this paragraph, the funds in the Interest Reserve shall never be used for any other purpose without the express written consent of Holder. Depletion of the Interest Reserve shall not release Maker from any of Borrower's obligations under the Loan Documents, including but not limited to the obligation to pay interest accruing under the note. After depletion of the Interest Reserve, or so long as any Event of Default has occurred and is continuing, all interest payments under the Note shall be made by Maker using its own funds; provided that

KELLEY, HERMAN & SMITH
1401 East Broward Boulevard - Suite 206 - Fort Lauderdale, FL 33301
Telephone: (954)462-7806 / Facsimile: (954)522-0396

Page 1 of 3                                                    INITIALS:

Holder, at its option and in its sole discretion, may obtain disbursements from the Interest Reserve notwithstanding such Event of Default. Upon the occurrence of an Event of Default, after lapse of any cure period with the Event of Default pending, the entire balance of the Interest Reserve shall be paid to Holder and applied to then outstanding balance of the Loan.

If default is made in the payment of any installment under this Note or if Maker violates any of the terms or breaches any of the conditions of the Loan Documents, the entire principal sum outstanding and all accrued interest shall at once become due and payable, without notice, at the option of the Holder of this Note. Failure to exercise this option shall not constitute a waiver of the right to exercise the same at any other time. The principal of this Note, and any part thereof, and all accrued interest, if any, shall bear interest at the maximum legal rate of interest chargeable under applicable law after maturity or default until paid. In the event there is no maximum rate applicable or in the event such maximum rate is otherwise indeterminable, it is agreed that such rate shall be eighteen percent (18.0%) per annum. All parties liable for the payment of this Note agree to pay Holder hereof reasonable attorneys' fees for the services of counsel employed after maturity or default to collect this Note, or to protect or enforce the security hereto, whether or not suit is brought.

The Holder of this Note may collect a late charge equal to five percent (5%) of any monthly payment of either principal or interest made more than ten (10) days after the due date thereof; provided, however, such late charge shall be waived by the Holder hereof to the extent the collection of such late charge would result in Maker paying interest in excess of the maximum rate of interest which is legally permitted under the laws of the State of Florida.

This Note and all sums due hereunder may be prepaid in whole or in part at any time without premium or penalty.

Nothing herein contained, nor any transaction related hereto, shall be construed or so operate to require Maker or any other person liable for repayment of same, to pay interest at a greater rate than is lawful in such case to contract for, or to make any payment, or to do any act contrary to law. Should any interest or other charges paid in connection with the loan evidenced by this Note by Maker or any parties liable for the payment of this Note result in the computation or earning of interest in excess of the maximum rate of interest which is legally permitted under the laws of the State of Florida, then any and all excess shall be and the same is hereby waived by Holder hereof, and any and all such excess paid shall be automatically credited first against and in reduction of the principal balance due under this Note or, at the option of Maker, paid by Holder to the Maker or any parties liable for the payment of this Note. If any clause or provision herein contained shall be unenforceable under applicable law, in whole or in part, then such clause or provision or part thereof shall only be inoperative as though not contained herein and the remainder of this Note shall remain operative and in full force and effect.

The remedies of Holder as provided herein and in the Loan Documents shall be cumulative and concurrent and may be pursued singularly, successively, or together at the sole discretion of Holder and may be exercised as often as occasion therefor shall arise. No act of omission or commission of Holder, including specifically any failure to exercise any right, remedy or recourse shall be effective unless it is set forth in a written document executed by Holder and then only to the extent specifically recited therein. A waiver or release with reference to one event shall not be construed as a bar to or as a waiver or release of any subsequent right, remedy, or recourse as to any subsequent event.

Maker and all sureties, endorsers, and guarantors of this Note hereby (a) waive demand, presentment for payment, notice of nonpayment, protest, notice of protest, and all other notice, filing of suit, and diligence in collecting this Note, in enforcing any of the security rights or in proceeding against any of the property covered by the Mortgage, (b) agree to any substitution, exchange, addition, or release of any such mortgaged property or the addition or release of any party or person primarily or secondarily liable thereon or hereunder, (c) agree that Holder shall not be required first to institute any suit or to exhaust his, their or its remedies

KELLEY, HERMAN & SMITH
1401 East Broward Boulevard – Suite 206 – Fort Lauderdale, FL 33301
Telephone: (954)462-7806 / Facsimile: (954)522-0398

Page 2 of 3

INITIALS:

against Maker or any other person or party to become liable hereunder or against the mortgaged property in order to enforce payment of this Note, (d) consent to any extension, rearrangement, renewal, or postponement of time of payment of this Note and to any other indulgence with respect thereto without notice, consent or consideration to any of them, and (e) agree that, notwithstanding the occurrence of any of the foregoing (except the express written release by Holder of any such person), they shall be and remain jointly and severally, directly, and primarily liable for all sums due under this Note, the Mortgage, the Commitment and the other Security Documents.

In the event of any sale, transfer, conveyance or encumbrance of the property encumbered by the Mortgage(s) securing this Note or any interest therein, or the sale, conveyance or pledge of any interest of Maker to any other entity, individual, firm, partnership or corporation, without Holder's prior written consent, which consent may be withheld at the holder's sole and absolute discretion, the entire principal indebtedness hereunder, together with any and all interest accrued thereon, shall become due and payable immediately.

Whenever used in this Note, the singular number shall include the plural, the plural, the singular, and the masculine shall include the feminine and the neuter, and the words "Maker", "Co-Maker" and "Holder" shall be deemed to include Maker, Co-Maker and Holder named in the opening paragraph of this Note and their respective successors and assigns, if any. It is expressly understood and agreed that Holder shall never be construed for any purpose as a partner, joint venturer, co-principal, or associate of Maker, Co-Maker or of any person or party claiming by, through, or under Maker or Co-Maker in the conduct of their respective businesses.

This Note is executed and delivered in the State of Florida and shall be construed by and enforced in accordance with the laws of the State of Florida.

MAKER AND HOLDER HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE THE RIGHT EITHER MAY HAVE TO A TRIAL BY JURY IN RESPECT TO ANY LITIGATION BASED HEREON, OR ARISING OUT OF, UNDER OR IN CONNECTION WITH THE LOAN DOCUMENTS OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF EITHER PARTY. THIS PROVISION IS A MATERIAL INDUCEMENT FOR THE HOLDER EXTENDING CREDIT TO MAKER.

Dated and executed as of the 10 day of FEBRUARY, 2004.

GROVELAND ESTATES, LLC, a Florida limited liability company

By: _____
CONRAD WAGNER, Managing Member

KELLEY, HERMAN & SMITH
1401 East Broward Boulevard - Suite 206 - Fort Lauderdale, FL 33301
Telephone: (954)462-7806 / Facsimile: (954)522-0396

Page 3 of 3

INITIALS: _____

CFN   2005031024
Bk 02772 Pgs 0996 - 1005; (10pgs)
DATE: 03/03/2005 02:45:40 PM
JAMES C. WATKINS, CLERK OF COURT
LAKE COUNTY
RECORDING FEES 86.50
MTG DOC 42,000.00
INTANGIBLE 24,000.00

*This instrument prepared by:*
Bruce Herman, Esq.
Kelley, Herman & Smith
1401 East Broward Boulevard - Suite 206
Fort Lauderdale, FL 33301

## MORTGAGE, ASSIGNMENT OF LEASES AND SECURITY AGREEMENT

THIS MORTGAGE, ASSIGNMENT OF LEASES AND SECURITY AGREEMENT (this "Mortgage") is made as of the **10 day of FEBRUARY, 2005,** by and between GROVELAND ESTATES, LLC, a Florida limited liability company ("Mortgagor"), and BFSPE, LLC, a Delaware limited liability company ("Mortgagee"), the address of which is 1401 East Broward Boulevard, Suite 201, Fort Lauderdale, FL 33301.

### WITNESSETH:

WHEREAS, Mortgagor is indebted to Mortgagee in the principal sum of **TWELVE MILLION AND NO/100 --- ($12,000,000.00) --- DOLLARS,** together with interest thereon (the "Loan"), as evidenced by that certain Promissory Note executed by Mortgagor and delivered to Mortgagee (the "Note"), which by reference is made a part hereof to the same extent as though set out in full herein;

NOW, THEREFORE, to secure the performance by Mortgagor of all covenants and conditions of this Mortgage and the Note, and in all other instruments and documents executed, or to be executed, in connection with the Loan, as well as the Commitment Letter dated **FEBRUARY 4, 2005,** pursuant to which the Loan is extended (the "Commitment"), (this Mortgage, the Note, the Commitment and all such other documents executed in connection herewith, are sometimes referred to herein, collectively, as the "Loan Documents"), and in order to charge the properties, interests and rights hereinafter described with such payment and performance and to secure additional advances, renewals and extensions thereof and for and in consideration of the sum of Ten and No/1 00 ($10.00) Dollars, Mortgagor does hereby mortgage, sell, pledge and assign to Mortgagee:

### THE MORTGAGED PROPERTY

(A)   All of that parcel of land as more particularly described in **Exhibit "A"** attached hereto and made a part hereof, to have and to hold the same, together with all the improvements now or hereafter erected on such property and all fixtures now or hereafter attached thereto, together with each and every of the tenements, hereditaments, easements, rights, powers, privileges, immunities and appurtenances thereunto belonging or in anywise appertaining and the reversion and reversions, remainder and remainders, and also all the estate, right, title, interest, homestead, right of dower, separate estate, property, possession and claim whatsoever in law as well as in equity of Mortgagor of, in and to the same in every part and parcel thereof unto Mortgagee in fee simple.

(B)   Together with a security interest in all personal property and fixtures affixed to or located on the property described in paragraph (A).

**KELLEY, HERMAN & SMITH**
1401 East Broward Boulevard - Suite 206 - Fort Lauderdale, FL 33301
Telephone: (954)462-7806 / Facsimile: (954)522-0396

(C)    Together with all rents, issues, profits, revenue, income and other benefits from the property described in paragraph (A) hereof to be applied to the indebtedness secured hereby, provided however, that permission is hereby given to Mortgagor, so long as no default has occurred hereunder, or under any of the Loan Documents, to collect, receive, and use such benefits from the property as they become due and payable, but not in advance thereof.

(D)    Everything referred to in paragraphs (A), (B) and (C) hereof and any additional property hereafter acquired by Mortgagor and subject to the lien of this Mortgage or any part of these properties is herein referred to as the "Mortgaged Property".

PROVIDED ALWAYS, that if Mortgagor shall pay to Mortgagee all payments due under the Note at the times and in the manner stipulated therein, and in all other instruments securing the Note, including renewals, extensions or modifications thereof, and fully perform the terms, covenants and conditions of this Mortgage and the other Loan Documents to be kept performed or observed by Mortgagor, then this Mortgage shall cease and be void, but shall otherwise remain in full force and effect.

Mortgagor covenants and agrees with Mortgagee as follows:

1.    Compliance with Note and Mortgage; Warranty of Title.    Mortgagor shall fully comply with all provisions of the Note, this Mortgage, and all of the other Loan Documents, and shall promptly pay to Mortgagee the principal, together with interest thereon, due under the Note and all other sums required to be paid by Mortgagor pursuant to the provisions of the Note, this Mortgage, and all of the other Loan Documents. Mortgagor is indefeasibly seized of the Mortgaged Property in fee simple and Mortgagor has lawful authority to convey, manage, and encumber the same as provided by the Mortgage, and does hereby so warrant. The sums advanced under the terms of the Loan Documents which sums are secured by this Mortgage shall mature and be due and payable in full on FEBRUARY 10, 2007.

2.    Payment of Taxes and Liens.    Mortgagor shall pay all the taxes, assessments, levies, liabilities, obligations and encumbrances of every nature now on the Mortgaged Property or that hereafter may be imposed, levied or assessed upon the Note, this Mortgage, any of the other Loan Documents, the Mortgaged Property or upon the indebtedness secured hereby. All such payments shall be made when due and payable according to law before they become delinquent and before any interest attaches or any penalty is incurred. Insofar as any indebtedness is of record the same shall be promptly satisfied and evidence of such satisfaction shall be given to Mortgagee. If an event of a default occurs under the Loan Documents, then, if required by the Mortgagee, in Mortgagee's sole discretion. Mortgagor shall pay to Mortgagee on the date of such regular installment of principal and interest as required by the Note secured hereby (or on the first day of each month if payments under the Note are due other than monthly), until the Note is fully paid, an amount equal to one-twelfth (1/12) of the yearly taxes and assessments as estimated by the Mortgagee, or such other proportionate share thereof estimated by the Mortgagee, to be sufficient to enable the Mortgagee to pay at least thirty (30) days before they become due, all taxes, assessments and other similar charges against the Mortgaged Property or any part thereof. Such added payment shall not be, nor be deemed to be, trust funds, but may be commingled with the general funds of the Mortgagee, and no interest shall be payable to Mortgagor with respect thereof. Upon demand of the Mortgagee, the Mortgagor agrees to deliver to the Mortgagee such additional monies as are required to make up any deficiencies in the amounts necessary to enable the Mortgagee to pay such taxes, assessments or similar charges. In the event of a default by the Mortgagor in the performance of any of the terms, covenants and conditions of this Mortgage, the Note, or any of the other Loan Documents, the Mortgagee may apply to the reduction of the principal sum or any other sum secured hereby in such manner as the Mortgagee shall determine, any amount under this Paragraph 2 remaining to the Mortgagor's credit.

KELLEY, HERMAN & SMITH
1401 East Broward Boulevard - Suite 206 - Fort Lauderdale, FL 33301
Telephone: (954)462-7806 / Facsimile: (954)522-0396

Page 2 of 10

3.    Insurance. Mortgagor shall keep the Mortgaged Property and the improvements now existing or hereafter erected on the Mortgaged Property insured as may be required from time to time by Mortgagee against loss by fire, other hazards and contingencies in such amounts and for such periods as may be required by Mortgagee. Mortgagor shall pay promptly, when due, any premiums on such insurance. All insurance shall be carried with companies approved by Mortgagee and the policy and renewals thereof shall be held by Mortgagee and have attached thereto loss payable clauses in favor and in form acceptable to Mortgagee. In the event of loss. Mortgagor shall give immediate notice by mail to Mortgagee and Mortgagee may make proof of loss if not made promptly by Mortgagor. Each insurance company concerned is hereby authorized and directed to make payments for such loss directly to Mortgagee instead of either to Mortgagor or Mortgagor and Mortgagee jointly. Insurance proceeds or any part thereof may be applied by Mortgagee at its option, after deducting therefrom all its expenses, including, without limitation, attorney's fees, either to the reduction of the indebtedness hereby secured or to the restoration or repair of the property damaged. Mortgagee is hereby authorized, at its option, to settle and compromise any claims, awards, damages, rights of action and proceeds, and any other payment or relief under any insurance policy. In the event of foreclosure of this Mortgage or other transfer of title to the Mortgaged Property in extinguishment of the indebtedness secured hereby, all right, title, and interest of Mortgagor in and to any insurance policies then in force shall pass to the purchaser or grantee. If an event of default occurs under the Loan Documents, then Mortgagee may, at its option, require Mortgagor to deposit with Mortgagee on the first day of each month, in addition to making payments of principal and interest, until the Note is fully paid, an amount equal to one-twelfth (1/12) of the yearly premiums for all insurance. Such deposits shall not be, nor be deemed to be, trust funds, but may be commingled with the general funds of Mortgagee, and no interest shall be payable in respect thereof. Upon demand by Mortgagee, Mortgagor shall deliver to Mortgagee such additional monies as are necessary to make up any deficiencies in the amounts necessary to enable Mortgagee to pay such premiums when due. In the event of default under any of the terms, covenants and conditions in the Note, this Mortgage, or any of the other Loan Documents to be performed or observed by Mortgagor, Mortgagee may apply to the reduction of the sums secured hereby, in such manner as Mortgagee shall determine, any amount under this paragraph remaining to Mortgagor's credit and any return premium received from cancellation of any insurance policy by Mortgagee upon foreclosure of this Mortgage.

4.    Condemnation. If the Mortgaged Property or any part thereof shall be damaged or taken through condemnation (which term when used herein shall include any damage or taking by any governmental authority or any other authority authorized by the laws of the State of Florida or the United States of America to so damage or take, and any transfer by private sale in lieu thereof), either temporarily or permanently, the entire indebtedness and other sums secured hereby shall, at the option of Mortgagee, become immediately due and payable. Mortgagee shall be entitled to all condemnation awards, damages, claims, rights of action and proceeds of, or on account of any damage or taking through condemnation and is hereby authorized, at its option, to commence, appear in and prosecute, in its own or Mortgagor's name, any action or proceeding relating to any condemnation, and to settle or compromise any claim in connection therewith. All such condemnation awards, damages, claims, rights of action and proceeds, and any other payments or relief, and the right thereto, are hereby assigned by Mortgagor to Mortgagee and Mortgagee, after deducting therefrom all its expenses, including, without limitation, attorneys' fees, may release any monies so received by it without affecting the lien of this Mortgage or may apply the same in such manner as Mortgagee shall determine, to the reduction of the sums secured hereby and to any prepayment charge provided in the Note, this Mortgage, or any of the other Loan Documents. Any balance of such monies then remaining shall be paid to Mortgagor. Mortgagor agrees to execute such further assignments of any condemnation awards, damages, claims, rights of action and proceeds as Mortgagee may require.

5.    Care of Mortgaged Property. Mortgagor shall not remove or demolish any building or other property forming a part of the Mortgaged Property without the prior written consent of Mortgagee. Mortgagor

**KELLEY, HERMAN & SMITH**
1401 East Broward Boulevard - Suite 206 - Fort Lauderdale, FL 33301
Telephone: (954)462-7800 / Facsimile: (954)522-0398

**Page 3 of 10**

shall not permit, commit, or suffer any waste, impairment or deterioration of the Mortgaged Property or any part thereof, and shall keep the same and all improvements thereon in good condition and repair. Mortgagor shall notify Mortgagee in writing within five (5) days of any damage or impairment of the Mortgaged Property. Mortgagee may, at Mortgagee's discretion, have the Mortgaged Property inspected at any time and Mortgagor shall pay all costs incurred by Mortgagee in executing such inspection.

6.    Mortgagee's Right to Make Certain Payments. In the event Mortgagor fails to pay or discharge any and all taxes, assessments, levies, liabilities, obligations and encumbrances in any way affecting or appertaining to the Mortgaged Property or any of the Loan Documents or the indebtedness secured hereby, or fails to keep the Mortgaged Property insured or to deliver the policies, premiums paid, or fails to repair the Mortgaged Property as herein agreed, Mortgagee may, at its option, pay or discharge such taxes, assessments, levies, liabilities, and obligations and encumbrances, or any part thereof, procure and pay for such insurance or make and pay for such repairs: Mortgagee shall have no obligation on its part to determine the validity or necessity of any such payment and any such payment shall not waive or affect any option, lien, equity or right of Mortgagee under or by virtue of this Mortgage or any of the Loan Documents. The full amount of each and every such payment shall be immediately due and payable and shall bear interest from the date thereof until paid at the Default Rate, as hereinafter defined, and together with such interest, shall be secured by the lien of this Mortgage and any other instrument securing the Note. Nothing herein contained shall be construed as requiring Mortgagee to advance or expend monies for any of the purposes mentioned in this paragraph.

7.    Payment of Expenses. Mortgagor shall pay all the costs, charges and expenses, including, without limitation, reasonable attorneys' fees, disbursements and cost of abstracts of title, incurred or paid at any time by Mortgagee due to the failure on the part of Mortgagor to promptly and fully perform, comply with and abide by each and every stipulation, agreement, condition and covenant of the Note, this Mortgage, and all of the other Loan Documents.  Such costs, charges and expenses shall be immediately due and payable, whether or not there be notice, demand, attempt to collect or suit pending. The full amount of each and every such payment shall bear interest from the date thereof until paid at the Default Rate, as hereinafter defined. All such costs, charges and expenses so incurred or paid together with such interest, shall be secured by the lien of this Mortgage and any other instrument securing the Note.

8.    After Acquired Property. The lien of this Mortgage shall automatically attach, without further act, to all after acquired property of whatever kind located in, on, attached to, or used, or intended to be used, in connection with or in the operation of the Mortgaged Property.

9.    Additional Documents. At all times during which this Mortgage is in effect, upon Mortgagee's request, Mortgagor shall make, execute and deliver or cause to be made, executed and delivered to Mortgagee, and, where appropriate, shall cause to be recorded or filed and thereafter to be re-recorded or refiled at such time and in such places as shall be deemed desirable by Mortgagee, any and all such further mortgages, instruments of further assurance, certificates and other documents as Mortgagee may consider necessary or desirable in order to effectuate, complete, enlarge, perfect, or to continue and preserve the obligations of Mortgagor under the Note, this Mortgage, and all of the other Loan Documents, and the lien of this Mortgage as a valid and prior lien upon all the Mortgaged Property. Upon any failure by Mortgagor to do so, Mortgagee may make, execute, record, file, re-record, or refile any and all such mortgages, instruments, certificates and documents for and in the name of Mortgagor. Mortgagor hereby irrevocably appoints Mortgagee as agent and attorney-in-fact of Mortgagor, which appointment is coupled with an interest, to do all things necessary to effectuate or assure compliance with this paragraph.

10.    Event of Default. Any one of the following shall constitute an event of default hereunder.

KELLEY, HERMAN & SMITH
1401 East Broward Boulevard - Suite 206 - Fort Lauderdale, FL 33301
Telephone: (954)462-7806 / Facsimile: (954)522-0398

Page 4 of 10

(a)    Failure by Mortgagor to pay, within ten (10) days of the due date, any installments of principal or interest due under the Note, or any deposits for taxes and assessments or insurance premiums due hereunder, or any other sums to be paid by Mortgagor under the Note, this Mortgage, or any of the other Loan Documents.

(b)    Failure by Mortgagor to duly keep, perform and observe any other covenant, condition or agreement in the Note, this Mortgage, or any of the other Loan Documents.

(c)    If either Mortgagor or any guarantor or endorser of the Note: (i) files a voluntary petition in bankruptcy, (ii) is adjudicated a bankrupt or insolvent; or (iii) dies or is adjudicated incompetent; provided, however, the death or adjudication of incompetency of a guarantor who is a natural person shall not be an event of default if within 90 days of death or adjudication of incompetency of such guarantor, the Mortgagor causes the estate of such guarantor to acknowledge such guarantor's obligations to the Mortgagee and Mortgagor provides an additional guaranty reasonably acceptable to the Mortgagee; or (iv) dissolves, ceases to exist or loses its good standing status; or (v) files any petition or answer seeking or acquiescing in any reorganization, management, composition, readjustment, liquidation, dissolution or similar relief for itself under any law relating to bankruptcy, insolvency or other relief for debtors, or (vi) seeks or consents to or acquiesces in the appointment of any trustee, receiver, master or liquidator of itself or of all or any substantial part of the Mortgaged Property or of any or all of the rents, revenues, issues, earnings, profits or income thereof, or (vii) makes any general assignment for the benefit of creditors, or (viii) makes any admission in writing of its inability to pay its debts generally as they become due; or (ix) a court of competent jurisdiction enters an order, judgment or decree approving a petition filed against Mortgagor or any guarantor or endorser of the Note, seeking any reorganization, arrangement, composition, readjustment, liquidation, dissolution or similar relief under any present or future federal, state, or other statute, law or regulation relating to bankruptcy, insolvency or other relief for debtors, which order, judgment or decree remains unvacated and unstayed for an aggregate of sixty (60) days whether or not consecutive from the date of entry thereof; or (xi) any trustee, receiver or liquidator of Mortgagor of all or any substantial part of the Mortgaged Property or of any or all of the rents, revenues, issues, earnings, profits or income thereof, is appointed without the prior written consent of Mortgagee, which appointment shall remain unvacated and unstayed for an aggregate of sixty (60) days whether or not consecutive.

(d)    Any breach of any warranty or material untruth of any representation of Mortgagor contained in the Note, this Mortgage, or any of the other Loan Documents.

(e)    The occurrence of any default under the terms of any mortgage or other security instrument which creates a lien or other security interest on or in the Mortgaged Property.

(f)    Any sale or conveyance or pledge of the Mortgaged Property or any portion thereof by the Mortgagor.

(g)    Any default in connection with any on going borrowings, which the Mortgagor or any guarantor hereof may have outstanding from the Mortgagee or any of its affiliates during the pendency of this transaction and, notwithstanding anything to the contrary contained herein, the Mortgagee shall not be obligated to release any of the Mortgaged Property held as collateral so long as any loan given by the Mortgagee to the Mortgagor or any guarantor is in default.

**KELLEY, HERMAN & SMITH**
1401 East Broward Boulevard – Suite 206 - Fort Lauderdale, FL 33301
Telephone: (954)462-7806 / Facsimile: (954)522-0396

**Page 5 of 10**

(h)    Mortgagee determines in good faith, in its sole discretion, that the prospects for payment of performance of the terms, covenants and conditions of the Loan Documents are impaired or there has occurred a material adverse change in the business prospects of Mortgagor, financial or otherwise.

(i)    If the Mortgagor, pursuant to Florida Statutes 697.04 (1)(b), as amended from time to time, shall file for record a notice limiting the maximum amount which may be secured by this Mortgage. Mortgagor shall have 30 days to cure any non-monetary defaults.

11.    Acceleration. If an event of default shall have occurred, Mortgagee may declare the outstanding principal amount of the Note and all interest accrued thereon, and all other sums secured hereby, to be due and payable immediately. Upon such declaration, such principal and interest and other sums shall immediately be due and payable without demand or notice.

12.    Remedies after Default. Upon the occurrence of a default hereunder, Mortgagee may proceed by suit or suits at law or in equity or by any other appropriate proceeding or remedy to: (i) enforce payment of the Note or the performance of any term hereof or any other right; (ii) foreclose this Mortgage and sell, as an entirety or in separate lots or parcels, the Mortgaged Property under the judgment or decree of a court or courts of competent jurisdiction; (iii) collect all rents, issues, profits, revenue, income and other benefits from the Mortgaged Property; (iv) appoint a receiver to enter upon and take possession of the Mortgaged Property and to collect all rents, issues, profits, revenue, income, and other benefits thereof and apply the same as a court may direct and such receiver shall have all rights and powers permitted under law; and (v) pursue any other remedy available to it including, but not limited to, taking possession of the Mortgaged Property without notice or hearing to Mortgagor. Mortgagee shall take action either by such proceedings or by the exercise of its power with respect to entry or taking possession, or both, as Mortgagee may determine.

13.    Assignment of Leases. As further security for the Loan, Mortgagor hereby transfers, assigns and sets over to Mortgagee, its successors and assigns, all the right, title, interest and privilege which Mortgagor, as lessor, has and may have in the leases (collectively, the "Leases") now existing or hereafter made and affecting the Mortgaged Property, or any part thereof, as the Leases may have been or may, from time to time, be hereafter modified, extended and renewed, with all rents, income and profits due and becoming due therefrom. Mortgagor will, on request of Mortgagee, execute and deliver assignments in recordable form (together with UCC-1 Financing Statements) of any future Leases affecting any part of the Mortgaged Property. In addition, Mortgagor hereby assigns to Mortgagee any award made hereafter to it in any court procedure involving any of the Leases in any bankruptcy, insolvency or reorganization proceedings in any state or federal court, and any and all payments made by lessees in lieu of rent. Mortgagor hereby grants to Mortgagee an irrevocable power-of-attorney, coupled with an interest, to appear in any action and/or to collect any such award or payment.

The collection of rents or payments under the Leases hereby assigned shall not constitute a waiver of any rights of Mortgagee under the terms of this Mortgage, the Note, or any of the other Loan Documents. It is expressly understood and agreed by Mortgagor and Mortgagee that before any default occurs under the terms of this Mortgage, Mortgagor shall have the right to collect said rents, income and profits from the Leases and to retain, use and enjoy the same.

In the event of default in the performance of any of the terms and conditions of the Note, this Mortgage, or any of the Loan Documents, Mortgagor hereby authorizes Mortgagee, at its option, to (a) enter and take possession of the Mortgaged Property; (b) manage and operate the Mortgaged Property; (c) collect all or any rents accruing therefrom and from the Leases; (d) let or relet the Mortgaged Property or any part thereof; (e) cancel and modify leases, evict tenants, bring or defend any suits in connection with the

**KELLEY, HERMAN & SMITH**
1401 East Broward Boulevard – Suite 206 - Fort Lauderdale, FL 33301
Telephone: (954)462-7606 / Facsimile: (954)522-0396

**Page 6 of 10**

possession of the Mortgaged Property in its own name or Mortgagor's name; (f) make repairs as Mortgagee deems appropriate; and (g) perform such other acts in connection with the management and operation of the Mortgaged Property as Mortgagee, in its sole discretion, deems proper.

The receipt by Mortgagee of any rents, issues or profits pursuant hereto after the institution of foreclosure proceedings under the Mortgage shall not cure such default nor affect such proceedings or any sale pursuant thereto.

Mortgagee shall not be obligated to perform or discharge any obligation or duty to be performed or discharged by Mortgagor under any of the Leases, and Mortgagor hereby agrees to indemnify Mortgagee for, and to hold Mortgagee harmless from, any and all liability arising from any of the Leases, or Mortgagee's possession, operation, management or maintenance of the Mortgaged Property, and the provisions hereof shall not place responsibility for the control, care, management or repair of the Mortgaged Property upon Mortgagee, or make Mortgagee responsible or liable for any negligence in the management, operation, upkeep, repair or control of the Mortgaged Property, resulting in loss, injury or death to any person.

14.     No Waiver. No delay or omission of Mortgagee or of any holder of the Note to exercise any right, power or remedy accruing upon the occurrence of any default shall exhaust or impair any such right, power or remedy or shall be construed to waive any event of default or to constitute acquiescence therein.

15.     Non-Exclusive Remedies. No right, power or remedy conferred upon or reserved to Mortgagee by the Note, this Mortgage, or any of the other Loan Documents is exclusive of any other right, power or remedy, but each and every such right, power and remedy shall be cumulative and concurrent and shall be in addition to any other right, power and remedy given hereunder, under the Note, or any of the other Loan Documents, now or hereafter existing at law, in equity or by statute.

16.     Successors and Assigns Bound. Whenever one of the parties hereto is named or referred to herein, the heirs, successors and assigns of such party shall be included and all covenants and agreements contained in this Mortgage, by or on behalf of Mortgagor or Mortgagee, shall bind and inure to the benefits of their respective heirs, successors and assigns, whether or not so expressed.

17.     Miscellaneous. In the event that any of the covenants, agreements, terms or provisions contained in the Note, this Mortgage, or any of the other Loan Documents shall be invalid, illegal or unenforceable in any respect, the validity of the remaining covenants, agreements, terms or provisions contained herein, in the Note, or any of the other Loan Documents shall in no way be affected, prejudiced or disturbed thereby.

18.     Attorneys' Fees. The term "attorney's fees" as used in this Mortgage includes any and all legal fees of whatever nature including, but not limited to, fees resulting from any appeal of an interlocutory order or final judgment or any other appellate proceeding arising out of any litigation.

19.     Future Advances. This Mortgage is given to secure not only the existing indebtedness, but also such future advances, whether such advances are obligatory or are to be made at the option of Mortgagee, or otherwise, as are made within fifteen years from the date hereof, to the same extent as if such future advances were made on the date of the execution of this Mortgage. The total amount of indebtedness that may be so secured may decrease or increase from time to time, but the total unpaid balance so secured at one time shall not exceed twice the face amount of the Note, plus interest thereon, and any disbursements made for the payment of taxes, levies or insurance on the Mortgaged Property, with interest on such disbursements at the Default Rate, as hereafter defined.

KELLEY, HERMAN & SMITH
1401 East Broward Boulevard - Suite 206 - Fort Lauderdale, FL 33301
Telephone: (954)462-7806 / Facsimile: (954)522-0396

Page 7 of 10

20. _Obligation of Mortgagor._ Mortgagor shall pay the cost of releasing or satisfying this Mortgage of record.

21. _No Transfer._ It is understood and agreed by Mortgagor that as part of the inducement to Mortgagee to make the loan evidenced by the Note, Mortgagee has considered and relied on the credit worthiness and reliability of Mortgagor. Mortgagor covenants and agrees not to sell, convey, transfer, or further encumber any interest in or any part of the Mortgaged Property without the prior written consent of the Mortgagee, and any such sale, conveyance, transfer, or encumbrance made without Mortgagee's prior written consent shall constitute an event of default hereunder. It is further understood, and agreed that any sale, conveyance or pledge of any interest of the Mortgagor to any other entity, individual, firm, partnership or corporation without the Mortgagee's prior written consent shall constitute an event of default hereunder. A contract to deed or agreement for deed or assignment of beneficial interest in any trust shall constitute a transfer pursuant to the provisions of this Paragraph. If any person or entity should obtain any interest in all or any part of the Mortgaged Property pursuant to the execution or enforcement of any lien, or pursuant to the execution or enforcement of any lien, security interest or other right, whether superior, equal or subordinate to this Mortgage or the lien hereof, such event shall be deemed to be a transfer by Mortgagor and an event of default hereunder.

22. _Default Rate._ The Default Rate shall be the highest rate permitted by applicable law.

23. _Hazardous or Toxic Materials._ The Mortgagor warrants and represents that the Mortgaged Property has not in the past been used, is not presently being used, and will not in the future be used for the handling, storage, transportation or disposal of hazardous or toxic materials. The Mortgagor does hereby indemnify and holds harmless the Mortgagee from and against any loss to the Mortgagee (including without limitation attorneys' fees) incurred by the Mortgagee as a result of such past, present or future use, handling, storage, transportation, or disposal of hazardous or toxic materials. The Mortgagee, at Mortgagee's sole option, at any time, may obtain, at the Mortgagor's expense, a report or reports from reputable environmental consultants of the Mortgagee's choice indicating whether the Mortgaged Property has been or at any time is being used for the handling, storage, transportation, or disposal of hazardous or toxic materials. In the event the Mortgagee requests such a report and said report indicates such past or present use, handling, storage, transportation, or disposal, the Mortgagee, in its sole discretion, may require that all violations of law with respect to hazardous or toxic materials be corrected forthwith and/or that the Mortgagor obtain all necessary environmental permits. Failure of the Mortgagor to promptly take such curative action as required by the Mortgagee may, at the option of the Mortgagee, be deemed an event of default under Paragraph 10 above. Notwithstanding the fact that the Mortgagee may have obtained such a report at or prior to the execution hereof, the Mortgagee may, from time to time, obtain additional reports if it deems, in its sole discretion, that such reports are necessary or appropriate.

**[SIGNATURES ON THE FOLLOWING PAGE]**

**KELLEY, HERMAN & SMITH**
1401 East Broward Boulevard - Suite 206 - Fort Lauderdale, FL 33301
Telephone: (954)462-7806 / Facsimile: (954)522-0396

**Page 6 of 10**

IN WITNESS WHEREOF, this instrument has been executed on the date first above written.

Signed, sealed and delivered
in the presence of:

BORROWER:

GROVELAND ESTATES, LLC, a Florida limited liability
company

By: _____

        CONRAD WAGNER, Managing Member

Address:    1401 East Broward Boulevard
              Suite 206
              Fort Lauderdale, FL  33301

STATE OF FLORIDA
COUNTY OF PALM BEACH

       I HEREBY CERTIFY that on this day, before me, an officer duly authorized in the State and County aforesaid to take acknowledgments, appeared CONRAD WAGNER, as Managing Member of GROVELAND ESTATES, LLC, a Florida limited liability company, personally known to me to be the person(s) described in and who executed the foregoing instrument or who produced _____
as identification and acknowledged before me that HE executed the same.

       WITNESS my hand and official seal in the County and State last aforesaid this 10 day of FEBRUARY, 2005.



NOTARY PUBLIC

                   _____
                   Printed Name of Notary Public

My Commission expires:

NOTARY SEAL



KELLEY, HERMAN & SMITH
1401 East Broward Boulevard - Suite 206 - Fort Lauderdale, FL 33301
Telephone: (954)462-7808 / Facsimile: (954)522-0398

Page 9 of 10

EXHIBIT "A"

PARCEL 1:

The West ½ of the Southeast ¼ of the Southwest ¼, lying Southeasterly of C.R. 565, in Section 1, Township 22 South, Range 24 East, Lake County, Florida.

ALSO

The East ½ of the Southeast ¼ of the Southwest ¼ in Section 1, Township 22 South, Range 24 East, Lake County, Florida

Tracts 53 and 54, Groveland Farms, Section 1, Township 22 South, Range 24 East, recorded in Plat Book 2, Pages 10 and 11, Public Records of Lake County, Florida.


PARCEL 2:

Tracts 59 and 60, in Section 1, Township 22 South, Range 24 East, in Groveland Farms, recorded in Plat Book 2, Pages 10 and 11, Public Records of Lake County, Florida.


PARCEL 3:

Parcel A: The Southwest ¼ of the Northwest ¼ of the Southeast ¼, Section 1, Township 22 South, Range 24 East, Lake County, Florida.

Parcel B: The Northwest ¼ of the Northwest of the Southeast ¼, Section 1, Township 22 South, Range 24 East, Lake County, Florida.

Parcel C: The West ¼ of the Northeast ¼ of the Northwest ¼ of the Southeast ¼, Section 1, Township 22 South, Range 24 East, Lake County, Florida.

Parcel D: The South ½ of the West ½ of the Northeast ¼ East of Road, Section 1, Township 22 South, Range 24 East, Lake County, Florida.

Parcel E: The South ½ of the Southeast ¼ of the Northwest ¼ East of Road, Section 1, Township 22 South, Range 24 East, Lake County, Florida.

Parcel F: All of Tracts 35, 45 and 46, lying East of C.R. Road 565, and that part of the East 297 feet of Tract 36, lying East of C.R. Road 565, all lying and being in Section 1, Township 22 South, Range 24 East, Groveland Farms, recorded in Plat Book 2, Pages 10 and 11, Public Records of Lake County, Florida.

F:\WPDOCS\ANDY\Wagner\Groveland Estates\Legal.doc

KELLEY, HERMAN, & SMITH
1401 E BROWARD BLVD
STE 206
FT LAUDERDALE, FL 33301

EXHIBIT "D"

SHERIFF'S DEED

CFN   2009044071
Bk 03762 Pgs 0724 - 725; (2pgs)
DATE: 04/27/2009   03:14:53 PM
NEIL KELLY, CLERK OF COURT
LAKE COUNTY
RECORDING FEES 18.50
DEED DOC 0.70

HIS INDENTURE, made this 16th day of April, in the year of our Lord Two Thousand and Nine, between Gary S. orders, Sheriff of Lake County, State of Florida (hereinafter referred to as the party of the first part) and Pyrrhic Victory, LC (hereinafter referred to as the party of the second part) whose permanent address is 1401 East Broward Blvd, Suite 06, Ft. Lauderdale, Florida, County of Broward, State of Florida.

/HEREAS, by virtue of a certain Writ of Execution issued out of and under the seal of the Circuit Court in and for Lake ounty, Florida, dated the 9th day of April, A.D.2009, in the suit of Kelley, Herman & Smith (Plaintiff) vs. Florida Real state Ventures, LLC (Defendant), directed and delivered to said Sheriff, commanding him that the goods, chattels, lands d tenements of said Defendant, he cause to made certain monies in said execution specified, the said Sheriff did levy on d seize all the estate, right, title, and interest which the said defendant had of, in and to the real property hereinafter scribed and on April 16th, A.D. 2009, being a legal sale day, sold the below described property at public auction 17200 illa City Road, in the City of Groveland, in said State and County, having first given public notice of the time and place f such sale by advertising said property for sale in the manner and form as required by the statute in such cases made and rovided in the Orlando Sentinel, an official newspaper published in said City of Tavares in said County, for thirty days ext proceeding said day of sale; and that as such sale the said property was struck off to the said party of second part for credit bid in the sum of one hundred dollars and no cents, no cash changed hands, as he being the highest bidder erefore and that being the highest sum bid for the same.

OW THIS INDENTURE WITNESSETH, that the said party of the first part, as Sheriff as aforesaid, by virtue of the id execution, and in pursuance of the statute in such cases made and provided, and in consideration of the sum of oney so bid as aforesaid, and in hand paid to the said part of the first part by the said party of the second part, at and fore the sealing and delivery of these presents, the receipt of whereof is hereby acknowledged, hath granted, bargained, ld and conveyed, and by these presents doth grant, bargain, sell and convey unto the said Pyrrhic Victory, LLC, the said rty of the second part, all the estate, right title and interest, which the said defendant had on the 16th day of April, A.D. )09, or at any time afterwards of, in and to all that certain real property in the County of Lake , Florida, known and scribed as follows:

ARCEL 1:
he West ½ of the Southeast ¼ of the Southwest ¼, lying Southeasterly of C.R. 565, in Section 1, Township 22 South, ange 24 East, Lake County, Florida.
LSO
he East ½ of the Southeast ¼ of the Southwest ¼ in Section 1, Township 22 South, Range 24 East, Lake County, Florida racts 53 and 54, Groveland Farms, Section 1, Township 22 South, Range 24 East, recorded in Plat Book 2, Pages 10 and , Public Records of Lake County, Florida
ARCEL 2:
racts 59 and 60, in Section 1, Township 22 South, Range 24 East, in Groveland Farms, recorded in Plat Book 2, Pages ) and 11, Public Records of Lake County, Florida.
ARCEL 3:

| | | |
|---|---|---|
| Parcel A: | The Southwest ¼ of the Northwest ¼ of the Southeast ¼ , Section 1, Township 22 South, Range 24 East, Lake County, Florida. |
| Parcel B: | The Northwest ¼ of the Northwest of the Southeast ¼ , Section 1, Township 22 South, Range 24 East, Lake County, Florida. |
| Parcel C: | The West ¼ of the Northeast ¼ of the Northwest ¼ of the Southeast ¼ , Section 1, Township 22 South, Range 24 East, Lake County, Florida. |
| Parcel D: | The South ½ of the West ½ of the Northeast ¼ East of Road, Section 1, Township 22 South, Range 24 East, Lake County, Florida. |
| Parcel E: | The South ½ of the Southeast ¼ of the Northwest ¼ East of Road, Section 1, Township 22 South, Range 24 East, Lake County, Florida. |
| Parcel F: | All of Tracts 35, 45 and 46, lying East of C.R. Road 565, and that part of the East 297 feet of Tract 36, lying East of C.R. Road 565, all lying and being in Section 1, Township 22 South, Range 24 |

East, Groveland Farms, recorded in Plat Book 2, Pages 10 and 11, Public Records of Lake County, Florida.

Address: 17200 Villa City Road, Groveland, FL 34736

TO HAVE AND TO HOLD said described real property unto said party of the second part, its successors and assigns forever as fully and absolutely as the said party of the first part, as Sheriff as aforesaid can or should convey by virtue of said execution and the laws relating thereto.

Signed in the presence of:

_____
Catie Roden

_____
Sandy Roberts

_____
Deputy Sheriff of Lake County
Sheriff Gary S. Borders
360 W. Ruby Street
Tavares, Florida 32778

STATE OF FLORIDA
COUNTY OF LAKE

This foregoing instrument was acknowledged before me this 16th of April, 2009, by Deputy Sheriff Borders of Lake County, who is personally known to me and who did not take an oath.

_____
NOTARY PUBLIC
STATE OF FLORIDA

Prepared by: Mimi Williams, Civil Department



SHERYLL MOZELL
Commission DD 832410
Expires October 24, 2012
Bonded Thru Troy Fain Insurance 800-385-7019